## MERCHANTS' LIFE INS. CO. v. LATHROP.
### (No. 942.)

(Court of Civil Appeals of Texas.   El Paso.
March 20, 1919.)

INSURANCE &#9758;66, 198(1)—MUTUAL BENEFIT
INSURANCE—REORGANIZATION OF COMPANY
—BREACH OF CONTRACT.

Iowa life insurance association, conducted on mutual assessment plan, by its reorganization into legal reserve or level premium company, pursuant to right under one of its articles of incorporation and Code Supp. Iowa 1913, § 1798b, a right conditional on change not affecting any membership dated prior to it, *held* to have breached contract with member, who became such prior to change, in respect of impairment of fund created for protection of certificate, and the member was entitled to recover sums theretofore paid by him with interest.

Appeal from Taylor County Court;  E. M. Overshiner, Judge.

Action by Chester H. Lathrop against the Merchants' Life Insurance Company. From a judgment for plaintiff, defendant appeals. Judgment affirmed, less the amount remitted.

Cunningham & Oliver, of Abilene, and Locke & Locke, of Dallas, for appellant.
Sayles & Sayles, of Abilene, for appellee.

### Statement of Case.

HIGGINS, J.  In 1896, appellant was incorporated under the laws of Iowa as a life insurance association, to be conducted upon a mutual assessment plan.  On August 31, 1907, appellee Lathrop, at the age of 47, was admitted to membership, and a certificate of membership and of insurance in the sum of $2,000, issued to him, payable to his wife, in the event of his death.  The articles of incorporation and by-laws of the association were made a part of the contract.  The articles of incorporation were indorsed upon the certificate, and pertinent portions thereof read:

Article III: "The business of this association shall be conducted upon the mutual assessment plan, secured by a reserve fund contributed by the members pro rata, according to the age at time of entry.  All interest in the reserve fund, and the certificate of membership to be forfeited upon the failure of a member to pay his assessment as provided by in these articles of incorporation."

Article XIII: "The funds of the association shall be designated as follows: The benefit fund, the reserve fund, and the contingent fund.  Each fund to be kept separate on the books of the association, and each fund shall be used only for the purposes herein provided.  The benefit fund shall consist of the moneys collected for the payment of death losses, and shall be collected by pro rata assessments levied by the board of directors on each certificate of membership of the association.  In providing funds for the purpose of promptly meeting all the claims against the association, the board of directors may from time to time determine and fix the amount deemed necessary therefor, the place at which, and the time at which or during which it shall become due and payable, and may regulate the method of collecting the same, and the board may in like manner provide funds in advance for the payment of any claims which may be anticipated during the three months next ensuing basing estimates therefor on the American Experience Tables of Mortality.

"The reserve fund shall consist of the interest accruing from all the funds of the association and the amount paid into said fund by each member of the association, which amount shall consist of the sum of fifty cents for each year of the age of the member, counted from the nearest birthday at the time such membership is applied for.  Said amount may be paid in cash or secured by a note at 4 per cent. interest, payable on such terms as the board of directors may prescribe, and if not paid within thirty days after the same or any part thereof becomes due and payable shall be forfeited to the association, and the certificate of membership shall become null and void.  This reserve fund shall be set apart as an emergency fund for the purpose of providing for the death losses in excess of one per cent. per annum of the membership of the association, and for the further purpose of advances for the payment of death losses when the benefit fund is exhausted, and for no other purpose."

Article XVII: "These articles of incorporation may be amended at any annual meeting of the association by a majority vote of the members present or voting by proxy.  They may also be amended by a like vote at special meeting called by the board of directors for that purpose; but in the latter case thirty days' notice in writing must be given the members, which notice shall show the amendments or alterations proposed, and the mailing of such notice addressed to the member at his last known post office address shall be deemed a service thereof.  But no proposed amendment to these articles of incorporation shall be considered at any special meeting unless the same shall have been on file in the office of the secretary for thirty days before such meeting.  In no case, however, shall the change be made so as to affect any membership dated prior to such amendment or change."

In January, 1909, article 17, was amended so as to read as follows:

"These articles of incorporation may be amended at any annual meeting of the association by a majority vote of the members present or voting by proxy.  They may also be amended by a like vote at special meetings called by the board of directors for that purpose; but in the latter case thirty days' notice in writing must be given the members, which notice shall show the amendments or alterations proposed, and the mailing of such notice to the member at his last known post office address shall be deemed a service thereof.  But no proposed amendment to these articles of incorporation shall be considered at any special meeting un-

less the same shall have been on file in the office of the secretary for thirty days before such meeting. All certificates issued shall be governed by the articles of incorporation and by-laws now in force or which may be hereafter adopted."

At the time he received his certificate, Lathrop paid into the reserve fund the sum of $23.50, and subsequently thereto, paid all assessments up to and including call No. 84, made in October, 1915. He refused to pay call No. 85, due January 1, 1916, and thereafter brought this suit upon the theory hereinafter indicated.

On February 9, 1915, said article 13 was amended by adding thereto the following:

"Provided that if the holder of any certificate shall substitute for his existing certificate any other form of certificate or policy which may be from time to time issued by this association, his contributions to the reserve fund and special reserve fund shall be applied to the payment of assessments or premiums on such substituted certificate or policy, in which event the amount aforesaid shall be paid over from such funds to the proper funds applicable for such purpose."

On February 10, 1915, amended and substituted articles of incorporation were adopted whereby the association was converted into a legal reserve or level premium company, with a capital stock of $100,000 divided into shares of $100 each. Pertinent portions of the amended articles of incorporation read:

Article III: "The purpose and intent of this amendment is to transform this corporation into a legal reserve and level premium insurance company, as provided by section 1798 (b) of the Supplement to the Code 1907 and its business shall be that of life insurance as a legal reserve or level premium company and it shall have and possess full power to transact and conduct every kind of life insurance provided for or permitted under chapters 1–6 and 8 of title 9 of the Code of Iowa of 1897, and all amendments thereto or hereafter adopted. And it shall be a continuation of the original corporation and retain all its original rights, powers, privileges and franchises so far as may be necessary to carry out all its contracts heretofore made with its members, including the issuance of certificates upon examination made at the time these articles become in force as such association, and this amendment shall not be construed to affect existing funds, rights or contracts excepting as in these articles expressly stated and these articles are and shall be construed as a substitution for the original articles, except in so far as the rights of existing members are concerned."

Article XII: "With the exception of carrying out the assessment contracts now outstanding, all business shall be conducted upon the level premium plan and the directors shall adopt such plan of insurance, forms of policies and tables of rates, etc., thereunder and not inconsistent with the law or the rights of existing members as they may deem proper."

Article XIII: "The board of directors shall provide suitable contracts whereby the holders of any certificates desiring to change to any level premium policy issued by the company may do so without medical examination and upon such equitable and uniform terms as may be provided by such board."

Article XIV: "The holders of certificates of membership issued under the original and amended articles of incorporation and by-laws as the same existed prior to the adoption of these amended and substituted articles of incorporation shall in the aggregate annually be charged for mortuary purposes such proportion of the total losses of the company as the expected loss on such certificates at attained age bears to the expected loss on the total amount of risks according to the American Experience Table of Mortality, but in providing for the amount required for losses under such certificates the contributed amount then shall continue to be made upon the basis of the age of entry, in accordance with the provisions of the articles and by-laws aforesaid, and the assessments therefor shall be made quarterly in advance as provided therein."

Article XV: "If the holder of any certificate heretofore issued by the association shall exchange the same for any policy issued by this company, his previous contribution to the reserve and special reserve fund shall be applied to the payment of premiums on such substituted policy, in which even the proper amount less interest or other accumulations thereon shall be transferred from such fund of the association to that of the company."

Article XVI: "The rights, liabilities and entire method of procedure with reference to the outstanding assessment contracts of this company shall be governed by the original articles and by-laws and amendments thereto, forming a part of said assessment contracts and shall remain unaffected as to them, excepting so far as modified by these amended and substituted articles of incorporation and excepting that all contingent fund payments shall be paid over to the general fund of the company."

The board of directors immediately, subsequent to the amendment of the articles of incorporation, adopted the following resolution:

"Resolved: That by-laws heretofore adopted for the government of the association be amended for the government of the company under the amended articles of incorporation by the addition thereto of the following, namely:

"Section 1. That the rights, liabilities, and the entire method of procedure with reference to the outstanding assessments contracts of this corporation shall be governed by the original articles and by-laws forming a part of said assessment contracts, which shall remain unaffected as to them, excepting so far as necessarily modified by the amendments to the articles of incorporation of this corporation, by 'original articles and by-laws,' as used in this section being meant the articles of incorporation and by-laws of this corporation as the same existed prior to the adoption of the amendments, transforming it into a legal reserve company.

"Sec. 2. The by-laws of this corporation heretofore passed shall not govern the issuance of the legal reserve policies or contracts or the

procedure thereunder or relating thereto, nor shall said by-laws be or be construed as any part or portion of any contract of insurance hereafter written by this corporation upon the legal reserve or level premium plan."

Section 1798b of the Iowa Code, under which the appellant's articles of incorporation were amended, reads:

"Sec. 1798b. *Reincorporation as Legal Reserve Company—Stock Company.*—Any existing domestic assessment company or association or fraternal beneficiary society may, with the written consent of the auditor of state, upon a majority vote of its trustees or directors, amend its articles of incorporation and by-laws in such manner as to transform itself into a legal reserve or level premium company, and upon so doing and upon procuring from the auditor of state a certificate of authority, as prescribed by law, to transact business in this state as a legal reserve or level premium company, shall incur the obligations and enjoy the benefits thereof, the same as though originally thus incorporated, and such corporation, under its charter as thus amended, shall be a continuation of such original corporation, and the officers thereof shall serve through their respective terms as provided in the original charter, but their successors shall be elected and serve as in such amended articles provided; but such amendment or reincorporation shall not affect existing suits, rights or contracts. Any assessment company or fraternal beneficiary society reincorporated to transact life insurance business, shall value its assessment policies or certificates or benefit certificates as yearly renewable term policies according to the standard of valuation of life insurance policies prescribed by the laws of this state; provided that accident or health associations may take advantage of all the provisions of this section, in so far as applicable, and may thereupon transform themselves into stock companies. But no such company or association shall reorganize under the provisions of this section unless it shall have accumulated sufficient surplus to constitute a reinsurance reserve equal to the unearned premium on all outstanding policies or certificates, as prescribed by the statutes of this state relating thereto."

The amendments to appellant's articles of incorporation were made in the manner prescribed by the laws of Iowa.

Other facts material to a consideration of the question presented will be indicated in the opinion.

On January 27, 1916, Lathrop filed this suit seeking to recover the various sums which he had paid appellant with interest from date of payment. He recovered judgment as prayed for.

### Opinion.

The suit was predicated upon the theory that appellant had breached its contract. The fundamental question presented is wheth-er the reorganization of appellant and its acts in pursuance thereof constitute a breach of its contract. This, we think, must be answered in the affirmative. It is not to be doubted that, under the law of Iowa and article 17 of the articles of incorporation, as such articles existed in 1907, appellant had the reserved right to amend its charter and reorganize as a legal reserve or level premium company. But this right was conditional. Article 17 expressly stipulates:

"In no case, however, shall the change be made so as to affect any membership dated prior to such amendment or change."

Section 1798b of the Iowa Code provides:

"But such amendment, or reincorporation, shall not affect existing suits, rights, or contracts."

These limitations upon the right of amendment and reorganization have been disregarded so as to materially affect the membership and rights of Lathrop in the particular now indicated. The reserve fund was set apart in trust as an emergency fund for the purposes specified in article 17. It was to be used for no other purpose. The amended articles authorize a diversion of the fund to the reorganized company in payment of premiums, due the company by holders of certificates who exchange the same. On February 1, 1915, the reserve fund amounted to $929,556.76. After the reorganization and up to April 1, 1916, 6,770 certificates of insurance had been surrendered and level premium policies issued in lieu thereof, and $140,661.68 (approximately one-seventh) of the reserve fund of the association withdrawn and diverted to the assets of the reorganized company as credits on premiums due upon new policies issued by the reorganized company. It is manifest that this course of conduct seriously impairs the fund which was created for the protection of Lathrop's insurance certificate, and may ultimately render his contract worthless. It is regarded as such a breach of the contract as entitled appellee to sue for and recover the sums theretofore paid by him with interest. Ericson v. Supreme, etc., 105 Tex. 170, 146 S. W. 160; Supreme Council, etc., v. Batte, 34 Tex. Civ. App. 456, 79 S. W. 629; Grand Lodge v. Stumpf, 24 Tex. Civ. App. 309, 58 S. W. 840; Black v. Supreme Council (C. C.) 120 Fed. 580, affirmed 123 Fed. 650, 59 C. C. A. 414.

By miscalculation judgment was rendered for $36.03 more than was proper. This is suggested for the first time in this court. Appellee in correction of the error has filed a remittitur in the amount indicated. The judgment is affirmed, less the amount remitted. Costs are taxed against appellant.