## MERCHANTS' LIFE INS. CO. v. GRISWOLD. (No. 236-3422.)*

(Commission of Appeals of Texas, Section B. Feb. 1, 1922.)

Insurance ⊜102—Agency held terminated by change in charter and form of insurance; "quit doing business."

Where one was employed as agent by an assessment company, receiving as compensation a certain percentage of the first year's assessments, his contract, being applicable only to that kind of business, was terminated where the company made a voluntary change in its charter and ceased to write assessment insurance and became an old-line company, under a provision in the agency contract that if, for any reason, the company "deem it advisable to quit business in Texas during the life of this contract, then from the time the association is no longer authorized to do business in Texas the contract shall be void so far as any future business is concerned, but as to all the rights and liabilities existing at the time of the said cessation of business the contract shall remain in full force;" for, when the company amended its charter changing the character of insurance it was authorized to write from that of assessment to that of level premium, it "quit doing business" within the meaning of the contract, although it continued in force its old certificates written under the assessment plan, and although it continued doing business in the state under its new charter powers.

Appeal from Court of Civil Appeals of Third Supreme Judicial District.

Action by S. M. Griswold against the Merchants' Life Insurance Company. From a judgment of the Court of Civil Appeals (212 S. W. 807) affirming a judgment for plaintiff, defendant appeals. Judgment of Court of Civil Appeals reversed, and that of district court reformed.

Locke & Locke, of Dallas, for appellant.

S. J. T. Smith, Alva Bryan, and J. N. Gallagher, all of Waco, for appellee.

McCLENDON, P. J. This suit was brought by S. M. Griswold, as plaintiff, against Merchants' Life Insurance Company, as defendant, to recover damages for alleged breach of a contract under which the defendant employed the plaintiff as its exclusive agent to solicit insurance in certain counties in Texas for a period of five years from April 1, 1914. The trial court's judgment, which was in favor of plaintiff upon a special issue verdict, was affirmed by the Court of Civil Appeals. 212 S. W. 807.

The judgment of the trial court was for $24,229, with legal interest from October 5, 1917. Of this amount $20,000 represented compensatory damages which the jury found plaintiff sustained by reason of being prevented from writing insurance after March 1, 1915. The application for writ of error does not call in question any of the items which go to make up this judgment except the $20,000 item, thus leaving intact, in any event, the trial court's judgment to the extent of $4,229 with interest.

The conclusion we have reached eliminates every question in the case except that presented by the proper construction to be given to paragraph 23 of the contract, which reads as follows:

"It is further understood and agreed by the parties hereto that, should the laws of Texas be so amended hereafter or should the party of the first part [the defendant] for any reason whatever deem it advisable to quit business in the said state of Texas during the life of this contract, then at and from the time the said association is no longer authorized to do business in the said state of Texas this contract shall be utterly null and void so far as any future business contemplated by the contract is concerned, but as to all the rights and liabilities of the several parties existing at the time of the said cessation of business the contract is to remain in full force and effect."

The precise question presented is whether a voluntary change of charter power under which defendant ceased to write "assessment" insurance and became a "level premium" company terminated the contract as to future business, within the meaning of the paragraph just quoted.

The following statement will suffice to be a clear understanding of the issue thus presented, which we deem controlling in the case:

---

Prior to March 1, 1915, the defendant was a corporation chartered under the laws of Iowa under the corporate name of "Merchants' Life Association." Under its articles of incorporation it was authorized to write insurance only upon what is known as the "assessment plan," sometimes called the "natural premium plan." On July 1, 1912, plaintiff entered into a contract of agency by which he was given exclusive right to represent defendant in 26 counties in Texas. August 15, 1913, by supplemental agreement other counties were added to his territory. On January 1, 1914, a new contract was entered into by which 21 additional counties were added. Plaintiff operated under these contracts up to April 1, 1914, when the contract in question was executed, which abrogated all the former contracts, except as to certain renewal rights. Under this last contract plaintiff was made defendant's exclusive agent "for soliciting applications for insurance" in 55 counties. Under the contract he was empowered to appoint local agents, examining physicians, and depositories; he was to give his exclusive time to the business; he was required to write a certain volume of insurance in certain designated periods; he could terminate the contract at any time by giving 90 days' notice, but defendant could terminate it only in case plaintiff failed to comply with its terms; his compensation consisted of a certain percentage of first year "assessments" or "premiums," as they were variously styled in the contract, and 75 cents per year per $1,000 of insurance after the first year upon renewals for a period of five years. The contract was for a period of five years from April 1, 1914, unless sooner terminated under some of its provisions. The last paragraph of the contract was that numbered 23 above quoted. There were several supplemental agreements made by which the territory and amount of insurance required to be written were decreased and the percentage of commissions increased. The contract is rather lengthy, but the above description of it will serve every useful purpose here. Plaintiff worked under this contract until it was terminated on or about March 1, 1915, under the following circumstances: On or shortly before that date defendant filed an amendment to its articles of incorporation under which its corporate name was changed to "Merchants' Life Insurance Company," and the character of insurance it was authorized to write was changed from "assessment" to "level premium," "old-line," or "legal reserve" insurance. This charter amendment was authorized under the Iowa laws, which provided that all policies or certificates in force at the time of the change should be kept in force under the old plan, unless changed to the level premium plan by mutual agreement.

From the date of this change defendant ceased to write any more assessment insurance in Texas or elsewhere, but continued in force its then existing certificates, except where changed by agreement to level premium policies. Up to that time defendant had a permit to write insurance in Texas under the assessment plan only; but upon amending its charter it took out a new permit in Texas to write insurance upon the level premium plan only. When this change was made negotiations were entered into between plaintiff and defendant looking toward a continuation of the agency under the new plan, but upon materially different terms. These negotiations failed because the parties were unable to agree upon terms for a new agency. The relative positions taken by the two contracting parties in these negotiations are not material. Both parties seemed to recognize that the old contract was not applicable to the new business. Under the old plan the defendant wrote only one kind of certificate or policy, under which premiums or assessments were collected during the entire life of the assessed. Under the level premium plan a number of different kinds of policies were written, which varied from a single premium for a whole life policy to those in which premiums were paid over various numbers of years or throughout the entire life. It is quite clear that at least as to some of these policies, such, for example, as those providing for a single premium or for premiums distributed over a short term of years, the rate of commissions provided in the contract could not be applied. It might also be added that plaintiff was an experienced agent in writing assessment insurance, but had no experience in writing old-line insurance.

Although the contract did not in express terms limit the kind of insurance to which it had application, we think there can be no serious question, but that it created an agency for the writing of insurance upon the assessment plan only.

"A contract should always be so construed as to effectuate the intentions of the parties thereto; and, in determining what was their intention, everything within the four corners of the instrument is to be considered, as well as the situation and relations of the parties, and the subject-matter to which the contract relates." McGregor v. Union Life Ins. Co., 121 Fed. 493, 496–498; 57 C. C. A. 613, 616.

Somewhat differently phrased: The object to be arrived at in the interpretation of any written instrument is to discover the true intent of the parties in the language used; and it is therefore not only permissible, but proper, that the courts "avail themselves of the same light which the parties enjoyed when the contract was executed, and may place themselves in the same situation as the par-

ties who made it, in order that they may view the circumstances as those parties viewed them, and so judge the meaning of the words and the correct application of the language and the things described." Lockwood v. Railway, 103 Fed. 243, 43 C. C. A. 202.

At the time the contract was executed the defendant had no power under its charter to write any character of insurance other than that upon the assessment plan; and the contract must be read and its provisions interpreted in the light of defendant's charter powers. In an early case in New Jersey the court had for interpretation a contract between two railroad companies for the division of tariffs, not only from lines of railroad then owned and operated by the companies, but from "any future extensions or branches." At the time the contract was entered into the companies had not exhausted their charter powers in constructing certain authorized branch lines. Later the charter of one company was amended authorizing the construction of additional branch lines, and it was held that the contract must be read in the light of the charter powers at the time the contract was made, and the provisions of the contract applied to the situation then existing, and that the expression quoted could not be held to apply to extensions afterwards constructed under charter powers granted after the contract was made, but was limited to those extensions which under its charter at the time the contract was executed the corporation had the right to make. We quote the following from that opinion:

"It is thus apparent that at the date of the contract these corporations each had powers unexhausted sufficient to meet the requirement of the words in question, and such was the case even excluding the immediate extensions referred to in the preamble. Now, if we apply Lord Bacon's maxim that 'all words, whether they be in deeds or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter and the person' (Bac. Mac. Reg. 10; Broom's Max. 576; W. L. R. Co. v. L. & N. W. R. Co., 11 C. B. 355), we must give an application to those words consistent with the objects authorized when the contract was made. And besides it cannot be held with any reason that when general words used in a contract by a corporation can be applied consistently with the scope of its act of incorporation that simply because they are general they may be taken to refer to objects outside of it, even where, by their general application, they might include them." Railway v. Railway, 20 N. J. Eq. 561.

The distinction between old-line or level premium insurance, on the one hand, and assessment insurance, on the other, has been very clearly drawn in a long line of judicial decisions. The case of Westerman v. Supreme Lodge, K. of P., 196 Mo. 670, 94 S.

W. 470, 5 L. R. A. (N. S.) 1114, gives a very full review of the cases upon this subject.

"The distinction between old-line and assessment policies thus is defined in Haydel v. Mutual Reserve (C. C.) 98 Fed. 200: 'It is important to understand distinctly what is assessment insurance or insurance on the assessment plan. A general statement of this proposition is that it is assessment insurance where the benefit to be paid is dependent upon the collection of such assessments as may be necessary for paying the amount insured. In other words, it is assessment insurance if payments to be made by the insured are not fixed—unalterably fixed—by the contract. On the contrary, an old-line policy is a contract where the amount to be paid by the insured is fixed, the premiums to be paid are unalterable, and the liability incurred by the defendant company is also fixed, definite, and unchangeable.' This definition is accurate and comprehensive, and is well supported by the decisions of our Supreme Court from which we have quoted.

"As is said in the Jacobs Case, the character of the policy is to be determined by the nature of the contract it expresses. If the benefit to be paid by the insurer is fixed, and level premiums are changed with no provision in the contract authorizing a raising or lowering of the premiums to meet the demands of changed conditions, the policy will be classed as an old-line contract, regardless of the nomenclature of the policy, or the character and avowed purposes of the company that issued it."

Knott v. Security Mut. Life Ins. Co., 161 Mo. App. 592, 144 S. W. 183.

The testimony in this case shows that assessment insurance is much cheaper per thousand for a given age than old-line insurance, and, according to plaintiff's evidence, much easier to write; that is, it is easier to write a given volume. We think clearly the contract, when properly construed, limited the agency to the particular kind of insurance that the defendant was authorized to write at the time the contract was made, and could not, on account of the generality of the language used, be extended to an essentially different kind of insurance which might thereafter be authorized under a change of charter powers.

This view is practically conceded by plaintiff in the following counter proposition in his brief in the Court of Civil Appeals:

"The company's voluntary change of its charter by which it rendered itself legally incapable of continuing to accept applications for assessment insurance, which it had employed Griswold to procure and submit to it, and which he had bound himself to procure and submit, was a breach of its contract with him."

It may be conceded for our present purposes that the contract bound defendant to employ plaintiff for the period of five years, subject to the provisions of paragraph 23. With this concession, we have no doubt of the correctness of the proposition above quoted from plaintiff's brief, unless the

change in defendant's charter powers came within the stipulation in paragraph 23 terminating the contract as to future business whenever defendant deemed "it advisable to quit business in said state of Texas." The effect of the change from assessment to old-line insurance was practically to disrupt the business which plaintiff had built up in the territory allotted to him; and we think there can be no question but that he would have been fully justified in refusing to continue to represent defendant, even if the latter had offered to continue the agency by applying all the terms of the contract to the new business of writing level premium insurance, and this independently of plaintiff's right under the contract to terminate it upon giving the required notice. Neither party was bound by the contract except as to the particular subject-matter of the contract—assessment insurance. And a failure of defendant to permit the further solicitation of assessment insurance by plaintiff would clearly be a breach of defendant's obligation, unless such failure was justified under paragraph 23.

This brings us to the question of the proper construction of the expression in paragraph 23 "to quit business in said state of Texas."

It is contended that the contingency provided for in this paragraph has not arisen: First, because defendant continued in force its old certificates written under the assessment plan; and, second, because the change in charter powers from the mutual assessment to the level premium plan was not the quitting of business in Texas, since the defendant continued to do business in Texas under its new charter powers.

It is quite apparent that the mere continuing in force of its old assessment plan certificate would not constitute the doing of an insurance business within the meaning of the contract. Independently of the provisions of the Iowa law which required companies changing to the level premium plan to continue in force their old assessment plan certificates, defendant would not have had the right to cancel or impair the value of these certificates; and this regardless of whether it withdrew, or was ousted, or otherwise quit writing insurance in Texas, or altogether. Merchants' Life Ins. Co. v. Lathrop (Civ. App.) 210 S. W. 593, and authorities there cited. The contract sued upon made plaintiff defendant's agent for soliciting insurance, and clearly, if the company quit writing new insurance altogether or quit writing insurance in Texas, this would amount to quitting business in Texas, within the meaning of the contract, although the defendant still continued in force its old certificates and collected premiums or assessments upon them. It is a matter of general knowledge that a number of insurance companies have withdrawn from the state of Texas, canceled their permits, and ceased to write insurance in the state, yet keeping in force of necessity their old policies. It can hardly be said that these companies are doing business in Texas. The contract sued upon contemplating that the defendant should continue to write insurance in Texas, it also contemplated, under the construction we give it above, that the defendant should continue to write insurance in Texas under the assessment plan, the only kind of insurance it was authorized to write when the contract was made, and the only kind of insurance which could be applied to the contract.

We think, therefore, that when defendant amended its charter changing the character of insurance it was authorized to write from that of assessment to that of level premium, it quit altogether doing an insurance business within the meaning of the contract. And manifestly to quit doing business everywhere, including Texas, is tantamount to quitting business in Texas. This being, as we conceive it, the proper construction of the contract, it clearly follows that when the change in charter powers was made and defendant ceased altogether the writing of new insurance under the assessment plan, the contract became, in accordance with its express terms, "utterly null and void so far as any future business contemplated by the contract is concerned."

We therefore conclude that the judgment of the Court of Civil Appeals should be reversed; that the judgment of the district court should be so reformed as to award plaintiff a recovery against defendant in the sum of $4,229, with interest thereon from October 5, 1917, at the rate of 6 per cent. per annum, and, as so reformed, the judgment of the district court should be affirmed. Costs of the trial should be taxed against defendant; all other costs against plaintiff.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed. Judgment of the district court reformed so as to award defendant in error $4,229 with 6 per cent. per annum interest from October 5, 1917. Costs of trial court taxed against plaintiff in error; all other costs against defendant in error.