Elizabeth Lamburne Hoebel, Appellee, v. The Travelers Insurance Company, Appellant.

Gen. No. 37,063.

Opinion filed June 15, 1934.

KIRKLAND, FLEMING, GREEN & MARTIN, for appellant; DAVID JACKER and WILLIAM H. SYMMES, of counsel.

HUME & KENNEDY, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

An action in contract in the municipal court of Chicago. At the conclusion of the evidence the trial court directed a verdict for plaintiff in the sum of $5,000 and this appeal followed a judgment entered upon the verdict.

Plaintiff's statement of claim alleges that *her* *"claim is based upon a Group Policy of insurance* issued by said defendant on the life of Fred Carl Hoebel, husband of this plaintiff in and by which policy this plaintiff was made beneficiary"; that the said policy "is in words and figures as follows:

"The Travelers Insurance Company
Hartford, Connecticut
"Group Policy No. G2095          Certificate No. 59.

"This Is To Certify that under and subject to the terms and conditions of a Group Policy of insurance No. G2095, issued and delivered by The Travelers Insurance Company, Hartford, Connecticut, the life of Fred Carl Hoebel, an Employee of
(Hereinafter called the Employee)
Central Manufacturing District Bank
(Hereinafter called the Employer)
is insured initially

for the sum of Fifteen Hundred (1500) Dollars, payable to Elizabeth Lamburne Hoebel—Wife, as beneficiary if death shall occur while an Employee of the Employer during the continuance of said policy. Such payment at the election of the Employer shall be paid either in one amount or in a fixed number of payments at intervals of not less than one month and covering a period of not exceeding one year.

"   . . .

"The insurance provided for by said policy terminates with the termination of employment with the said Employer unless the Employee shall elect to continue the insurance in accordance with the following Conversion Privilege

Central Manufacturing District Bank
Chicago
Conversion Privilege
(Taken from Group Policy)

"Any Employee of the Employer covered under this group policy shall, in case of the termination of employment for any reason whatsoever, be entitled to have issued to him by the Company without evidence of insurability upon application to the Company made within thirty-one days after such termination and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the Company, except term insurance, in an amount equal to the amount of his protection under such group insurance at the time of such termination. . . ."

The statement of claim avers:

"That said Hoebel was employed continuously for more than nine years from May 13, 1921, by the Central Manufacturing District Bank; that said . . . Hoebel died on August 23, 1932 . . . ; that plaintiff has repeatedly requested the payment of said insurance due her as beneficiary by defendant, but that it has refused to make payment as in and by said policy provided to be paid to this plaintiff; . . . avers that all of the premiums due and payable under said policy were duly paid to defendant prior to the death of Fred Carl Hoebel."

A motion to strike the statement of claim was overruled, but the trial court entered a rule on plaintiff to file an additional statement of claim. Plaintiff then filed the following:

"Additional Statement of Claim.

"Plaintiff further avers and states that on, to-wit, August 23, 1932, the date of the death of said insured, the said Fred Carl Hoebel was first assistant Vice

President of the Central Manufacturing District Bank; that he had not resigned and was not discharged as such officer of said bank up to and including the date of his death; . . . that on August 15, 1932, the said Hoebel sent his application to defendant . . . to change said group insurance to a straight life insurance; that said application was received by defendant and retained by it, and that thereafter the defendant ordered and directed the said Hoebel to forward to it the said group insurance certificate so that a new policy could be issued to said Hoebel; that before said group insurance certificate could be returned to defendant the said Hoebel died; that at the time of the death of said Hoebel all premiums under such policy of insurance hereinbefore set forth was duly paid to said defendant up to and including the date of the death of said decedent.''

The material part of defendant's affidavit of merits is as follows:

"That under the group Policy of Insurance, . . . Hoebel was not entitled to convert the Certificate to other insurance, unless the Group Policy of Insurance . . . was in force and . . . Hoebel had terminated his employment; that said Group Policy of Insurance . . . was cancelled on June 24, 1932, and said Certificate . . . after said date gave no right to the beneficiary thereunder, as after said date said Group Policy was discontinued.

"That the employment of . . . Hoebel with Central Manufacturing District Bank terminated on July 1, 1932, and that the application of the said . . . Hoebel, under the terms of Group Policy of Insurance, . . . for conversion of the Group Life Insurance under said Group Policy to individual insurance had to be filed within thirty-one days of said date, July 1, 1932, and within thirty-one days of the termination of his employment with said Bank, and that the incomplete

application which . . . Hoebel sent to defendant, dated August 15, 1932, or August 18, 1932, and correctly dated August 18, 1932, was filed too late to give him any right under said Group Life Policy, as said application was not made to defendant within thirty-one days after the termination of his employment with said Bank.

"That if the termination of employment of . . . Hoebel with Central Manufacturing District Bank did not occur until July 15, 1932, the application for conversion of Group Life Insurance to individual insurance submitted to defendant on August 18, 1932, was submitted too late under said Group Policy of Insurance . . . to entitle . . . Hoebel to convert said Group Life Insurance to individual insurance;

"That in said application . . . Hoebel agreed in words and figures, as follows:

" '19. I agree for myself and for any person who may have or claim an interest in any contract which may be issued upon this application, as follows: A. That every statement hereinabove contained is true; and that the contract issued hereupon shall not take effect unless the first premium shall be actually paid to the company during my lifetime upon or before delivery of the contract.'

and that the said . . . Hoebel did not pay the first premium to the company, this defendant, during his lifetime upon or before delivery of the contract, or at any time, and that there was no premium paid with the said application and there was no individual insurance policy issued during the lifetime of . . . Hoebel, and there was no premium paid during the insured's lifetime, and that there was no policy of insurance delivered or in force or effect on the life of the said . . . Hoebel. . . . "

Fred Carl Hoebel had been in the employ of the Central Manufacturing District Bank (hereinafter

called the Bank) for 12 or 14 years, and on June 24, 1932, was an assistant vice president of it. In 1921 the defendant issued a "group policy" which covered the Central Manufacturing District and certain allied companies, and a rider was issued which covered the Bank, an allied company, and an individual certificate of insurance was issued to Hoebel on May 13, 1921. The group policy provides, *inter alia*:

"Termination of Insurance:—The insurance of each employee covered hereunder shall end when he shall leave the service of the Employer or be dismissed therefrom, but without prejudice to his right to conversion to individual policy form. . . .

"Certificates of Insurance—Conversion:—The Company will issue to the Employer for delivery to each employee whose life is insured under this policy, an individual certificate setting forth a statement as to the insurance protection to which he is entitled and to whom payable. Any employee of the Employer covered under this group policy shall, in case of the termination of employment for any reason whatsoever, be entitled to have issued to him by the Company without evidence of insurability upon application to the Company made within thirty-one days after such termination and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the Company, except term insurance, in an amount equal to the amount of his protection under such group insurance policy at the time of such termination."

The Bank paid the entire premium due on its employees' certificates to the Central Manufacturing District and the latter paid defendant. While the employees did not directly contribute to the payment of the premiums, there is evidence to the effect that the

Bank paid the premiums as part of the compensation due employees.

On June 24, 1932, the board of directors of the Bank, at a special meeting, passed the "following preambles and resolutions:"

"Whereas, during the period of five months there has been a steady continual decrease of the deposits covered in the commercial and savings deposits of this bank to the extent that the commercial deposits of this bank have shrunk approximately five and a half million dollars on January 1, 1932, to approximately three million dollars, and the savings deposits have shrunk from approximately one and one-half million dollars on January 1, 1932, to approximately nine hundred thousand dollars, and

"Whereas, such withdrawals have necessarily required the liquidation of a pro-rata part of the bank's assets in order that it might at all times maintain itself in liquidating condition, and

"Whereas, because of the present unprecedented condition, it is the opinion of the Board that such condition will in all probability continue, and

"Whereas, notwithstanding the fact that the bank is now amply solvent and its capital unemployed, it is the opinion of this Board that in order to conserve the assets of the bank and to protect the interests of the depositors and stockholders, and to insure the orderly liquidation, *it is advisable that the bank forthwith discontinue business* and the Auditor of Public Accounts be requested to assume immediate charge of its affairs.

"Now, therefore, be it resolved, that the officers of this bank be, and they are hereby authorized, empowered and directed to forthwith *close the doors of this bank and discontinue the transactions of its business,* and be it further

"Resolved that pursuant to the provisions of the general banking act of Illinois, *this bank by its board of directors does request Oscar Nelson, auditor of public accounts to forthwith take charge of this bank, and of all its assets to the end that such assets may be conserved and liquidated in an orderly manner for the benefit of the depositors, and stockholders of this bank."* (Italics ours.)

On the same date, pursuant to this request, the state auditor took charge of the Bank, which then "ceased operations in dealing with the public." On August 6, 1932, there was presented to a chancellor of the circuit court by the state auditor a verified bill of complaint (not set forth in the record), and thereupon, upon motion of the attorney general, an order was entered which found that on June 24, 1932, an examination of the Bank by the auditor disclosed that its capital stock had become impaired and that its condition was such that the impairment could not be made good; that the Bank was being conducted in an unsafe manner and it was dangerous for it to continue to receive deposits and to further conduct a banking business; "that said Auditor . . . thereupon took control of the property, assets and effects of said bank and prohibited the carrying on by it of any banking business, and that said bank has since said date ceased to do the business for which it was incorporated, and is not now doing business." The order appointed W. F. Leimert receiver of the Bank and gave him very broad powers.

On August 1, 1932, the Central Manufacturing District wrote defendant as follows:

"We have been asked to cancel the insurance coverage on all Central Manufacturing District Bank employees, as of June 24th, 1932. Yellow record cards are attached, also a complete list of same.

"Would also suggest that you have your representative call on Mr. Geary V. Stibgen, 1110 W. 35th Street,

to ascertain the number, if any, who would care to continue the insurance individually."

On August 15, 1932, defendant wrote the said receiver:

"We enclose rider in duplicate which cancels the Group Insurance coverage of the employees of the Central Manufacturing District Bank under the Group Life Policy G-2095, issued to the Central Manufacturing District, as of June 24, 1932, the date on which the bank closed.

"Will you kindly sign both copies of this rider, retain the original and return the duplicate to us for the completion of our file?

"Final premium adjustment will be made shortly."

On August 15, 1932, Hoebel wrote defendant:

"Enclosed please find my personal application with the conversion of my group insurance with the Central Manufacturing District Bank, to that of a straight life policy for like amount. I have failed to enclose a check for premiums as I am not aware of the amount that will be necessary, and whether or not your company will accept this application. But to again remind you that this is a little bit late for your thirty days clause through no fault of my own, as I was in connection with your office approximately two weeks after the bank closed.

"Trusting that this application will be accepted by your company, I remain . . . "

On August 17, 1932, defendant wrote Hoebel:

"We are obliged to return herewith the application you recently sent us in connection with the conversion of your Central Manufacturing District Bank Group Certificate, inasmuch as you did not have the witness complete the reverse side of the application in the place provided. When that has been attended to, please return the application to us.

"We would also appreciate it if you will send us your Group Certificate and advise us the date on which you terminated your employment with the bank."

On August 18, 1932, Hoebel wrote defendant:

"I am enclosing herewith, application in connection with the conversion of my Central Manufacturing District Bank Group Certificate, same having been completed by witness.

"May I inform you at this time, that my Group Certificate is in Evanston, and will forward same under separate cover."

When Hoebel died, on August 23, 1932, no policy had been issued to him by defendant under the conversion clause of his certificate, no premium had been paid by him upon account of such a policy, and his application had not been accepted by defendant. On August 23, 1932, defendant wrote the receiver as follows:

"Re: Group Life Policy G-2095

Central Manufacturing District Bank

"In view of the cancelation of coverage of employees of Central Manufacturing District Bank under the above contract as of June 24, 1932, the date on which the bank closed, we enclose final statements, showing a credit to the policyholder of $1,690.68.

"Record cards of the employees are also enclosed.

"Check for this credit will be forwarded shortly."

On August 26, 1932, defendant wrote Central Manufacturing District:

"Re: Group Life Policy G-2095

"Final statements relating to the cancelation of coverage of employees of the Central Manufacturing District Bank, effective June 24, 1932, have been passed along to Mr. Leimert, Receiver. These statements showed a refund credit due by reason of this cancelation of $1690.68.

"We are enclosing our check # 838367 in the amount of $1690.68 covering this refund, and shall appreciate your placing it in the proper account. We have advised Mr. Leimert that this refund check is being sent you."

On November 7, 1932, Central Manufacturing District sent the following letter to defendant:

*"Re: Group Policy G-2095.*

"We hold your company's check # 838367, in the amount of $1,690.68, covering the refund credit by reason of cancellation of coverage of employees of the Central Manufacturing District Bank from the date of June 24th, 1932.

"A representative of your company has delivered to us duplicate copies of Rider form, to be executed and attached to Group Life Policy No. G-2095.

"We cannot execute the Rider, or endorse for payment the refund check, until assurance is given to us that either or both of these proceedings will in no way prejudice the claim made against you by Mrs. Hoebel, widow of Fred Carl Hoebel, deceased, one of the employees of the Central Manufacturing District Bank, whose application for conversion was in your hands at the time of his death."

On November 21, 1932, defendant replied to the same as follows:

"Re: Group Life Policy G-2095.

"I referred your letter of November 7 to our home office, and have today been advised by them that the execution of the rider and the endorsement of the check for refund under your Group Life Policy will not affect or prejudice the case in question.

"I shall, therefore, appreciate it if you will sign the rider and return it to us for the completion of our file."

Plaintiff's statement of claim alleges that the claim is based upon the group policy, and the trial court, in directing a verdict for plaintiff, stated that he did so "on the theory that the corporation still has a corporate existence; that he (Hoebel) was at the time the bank went into receivership an assistant vice president of the bank and he never resigned his office as

assistant vice president up to the day he died, August 23d; that the rider in question cancelling the policy of June 24th was not mailed to the Central Manufacturing District by the insurance company until sometime in November, and was not executed by the Central Manufacturing District until that time, and that the draft represented the unearned premium from June 24th, 1932 to May 1933, was not sent until November, and that an interest vested in the plaintiff in this case, and that the attempted cancellation was in pursuance of an interest that had already vested, I will have to direct a verdict for the plaintiff in the case. And on the theory also that there is no dispute in the evidence of these facts that Mr. Hoebel was still an officer of the corporation up to the time he died; that he never resigned *and that he never rendered any services to the bank from the date of its closing up to the day of his death,* though he did render services for the Auditor of Public Accounts for one week, approximately, after the day of closing, and that there are no facts in dispute for the jury to pass upon. The question of employment is a question of law as raised by the evidence.'' It thus appears that the trial court adopted the theory of plaintiff's statement of claim that the group policy was still in force at the time of the death of Hoebel and that the latter was an employee of the Bank at that time.

Defendant contends that the group policy, under which plaintiff sued to recover, ''was cancelled by the Central Manufacturing District effective as of June 24, 1932 (the day the bank was turned over to the State Auditor), prior to the death of Fred Carl Hoebel, with a request for the return of the unearned premium.'' In the view that we have taken of this appeal we do not deem it necessary to determine the question of fact as to whether or not the group policy was cancelled as of June 24, 1932. Nor do we deem

it necessary, under the pleadings and the facts, to determine this question: Assuming that, as between the Bank and the defendant, the group policy was cancelled as of June 24, 1932, what effect, if any, would such a retroactive cancellation have upon the rights of Hoebel in the matter of a conversion policy? That he had certain rights under the group policy which the Bank and defendant could not arbitrarily take away is certain. In fact, defendant admits in its brief that "there was no interest that could vest in the plaintiff or in Mr. Hoebel, unless within 31 days after the termination of his employment Mr. Hoebel had converted his certificate to individual insurance." In quoting this admission we do not wish to be understood as holding or intimating that Hoebel's rights to a conversion policy would fail if he did not secure a conversion policy within 31 days. In view of the pleadings and the reasons given by the trial court for directing a verdict for plaintiff, we are not called upon to determine what rights, if any, Hoebel had to a conversion policy at the time of his death.

Defendant contends that Hoebel was not an employee of the Bank after June 24, 1932, and that, therefore, under the terms and conditions of the certificate of insurance issued by defendant under the group policy, plaintiff has no right to recover under that policy; that under the pleadings and the evidence the trial court was not warranted in directing a verdict for plaintiff. The contention of defendant that Hoebel was not an employee of the Bank after June 24 is undoubtedly sustained by the overwhelming weight of the evidence. That plaintiff would have no right to sue defendant under the group policy if Hoebel's employment with the Bank had terminated when the receiver took charge of the Bank is not even disputed by plaintiff, and the trial court's decision was based, in part, upon the assumption that Hoebel was still an

employee of the Bank at the time of his death although he had rendered no services to it from the date of its close to his death, for the sole reason that the Bank still had a corporate existence and the evidence failed to show that Hoebel had resigned his office as an assistant vice president of the Bank. "An employee is one who works for an employer; a person working for a salary or wage." (*Helliwell v. Sweitzer,* 278 Ill. 248, 253.) The evidence shows that after the Bank was closed, on June 24, it ceased to function as a going concern, and that all of its employees, including its officers, who were retained by the state auditor, were subject to the orders of the latter and were paid by him. Hoebel was employed by the auditor until July 1, 1932, and on July 5, 1932, he signed a receipt for his pay for the period in question, which shows on its face that he was paid by the auditor for his work. After July 1 he performed no services for the auditor, the receiver nor the Bank. In his application to defendant for group conversion insurance, dated August 15, Hoebel stated that his then occupation was "Real Estate, Servicing Mortgages," and that the name and address of his then employer was "Hoebel and Gordon Realty Co., 809 W. 35th St., Chicago, Ill." The group policy provides that "the insurance of each employee covered hereunder shall end when he shall leave the service of the Employer or be dismissed therefrom, but without prejudice to his right to conversion to individual policy form," and that "any employee of the Employer covered under this group policy shall, in case of the termination of employment for any reason whatsoever, be entitled to have issued to him by the Company . . . a policy of life insurance. . . ." That Hoebel considered himself no longer an employee of the Bank at the time that he applied to defendant for "the conversion of my group insurance . . . to that of a straight life policy for like amount . . . "

is obvious. Indeed, he would have no right to apply for a conversion policy until his employment with the Bank had terminated. Under the provisions of section 11 of the General Banking Act, Cahill's Ill. Rev. St. 1931, ch. 16a, ¶ 11, pp. 170, 171, and under the powers given the receiver in the instant case by the chancellor, it is evident that that official was ordered to handle the entire affairs of the Bank. It must also be remembered that the directors of the Bank resolved that the Bank discontinue business and that the auditor be requested to take charge of its affairs; that its doors be closed, and that the auditor take charge of the Bank and of all of its assets "to the end that they may be conserved for the benefit of the depositors and stockholders." While plaintiff, in the trial, endeavored to prove that Hoebel might have performed services for the corporation as an assistant vice president even after the appointment of the receiver, she has not argued in this court that Hoebel was an employee after the receiver was appointed. However, if we assume that she made out a prima facie showing in that regard, it is certain that the trial court erred in holding, as a matter of law, that Hoebel was an employee of the Bank at the time of his death. If we take the view of the evidence most favorable to plaintiff, we must, nevertheless, hold that the question of the alleged employment should have been submitted to the jury.

The judgment of the municipal court of Chicago is reversed and the cause is remanded.

*Reversed and remanded.*

SULLIVAN, P. J., and GRIDLEY, J., concur.