## PAN AMERICAN LIFE INS. CO. v. GARRETT et al.

### No. 4470.

Court of Civil Appeals of Texas. El Paso.
July 11, 1946.

Rehearing Denied Sept. 19, 1946.

Potash & Cameron, of El Paso, for appellant.

Ernest Guinn, of El Paso, for appellees.

McGILL, Justice.

Appellees, as plaintiffs, instituted this suit against appellant as defendant and sought a declaratory judgment declaring the rights of the parties under certain certificates of insurance issued by defendant to each of the plaintiffs. By their first amended petition plaintiffs alleged the issuance by defendant of two group contracts of insurance to the El Paso Electric Company Employes' Association, an incorporated association of which they were members, by which they were insured as well as by the individual certificates issued to them. They alleged that defendant had notified them that all of their policies of insurance had been cancelled as of August 5, 1944, and had breached its contracts with them and they sought to recover damages for such breach. By trial amendment, all of plaintiffs except P. E. Breckenridge and William L. Glass, elected to rescind their contracts of insurance because of the alleged wrongful breach and repudiation thereof by defendant, and each sought to recover the premiums paid by him with interest thereon from the dates of payment, or, in the alternative, the value of his certificates. Breckenridge and Glass each alleged that he had become wholly disabled and would be permanently, continuously and wholly prevented thereby from engaging in any occupation or employment for wage or profit within the terms of his certificates and that defendant had denied liability and repudiated the certificates and sought to cancel them. Each sought to recover dam-

ages in the sum of $2140.00 on the certificates held by him, or in the alternative, $18.00 per month for sixty months on each certificate from date of his disability. Defendant in all of its pleadings, for reasons which we shall hereinafter discuss, took the position that the contracts of insurance had expired and denied all liability thereon. Trial was to the court. Judgment was rendered in favor of each of the plaintiffs except Breckenridge and Glass for sums representing the total amount of premiums paid by each from the respective dates of the certificates held by him until August 5, 1944; in favor of Breckenridge for $1118.00 and in favor of Glass for $1246.00, representing the face value of the certificates held by each less premiums thereon from August 5, 1944 to the date of disability discounted at the rate of three percent per annum for the life expectancy of each.

Two group policies designated Group Policy No. 120 and Group Policy No. 120A, and one of the certificates above referred to, were introduced in evidence. Group Policy No. 120 was issued August 5, 1925 and Group Policy No. 120A, December 1, 1926. These policies are identical except as to date of issuance and date on which the coverage begins and amount of premiums. They insured the lives of those employees of the El Paso Electric Company, Rio Grande Valley Traction Company, or El Paso and Juarez Traction Company, called the "Employers", who were members of the El Paso Electric Company Employes' Association, called the "Assured" for the amounts shown in certificates referred to and made a part thereof. Each certificate issued by defendant to each of the plaintiffs refers to one of the group policies issued to the El Paso Electric Company Employes' Association (called the "Assured") covering members of the Assured who are employees of the El Paso Electric Company, Rio Grande Valley Traction Company, or El Paso and Juarez Traction Company (called the "Employers") and contains the following clause: "The insurance provided for by said contract terminates with the termination of employment with the said Employers or the termination of membership with the said Assured. * * *" We shall hereafter refer to the El Paso Electric Company Employes' Association as the "Association", to the El Paso Electric Company as the "Electric Company" and sometimes to appellant as the "Insurance Company".

The court filed elaborate findings of fact and conclusions of law from which it appears that on December 31, 1943 the Electric Company, pursuant to directive from the Federal Security and Exchange Commission, sold its entire transportation system to the El Paso City Lines, Inc., a distinct corporate entity from the Electric Company, also that prior to such sale, all of plaintiffs were employees of the Electric Company in its transportation department and after such sale, they worked for the El Paso City Lines, Inc. and continued to perform the same duties and receive the same compensation as before the sale.

The first conclusion of law is that the sale or change of ownership of the transportation system did not terminate the employment of plaintiffs within the meaning of either the master or group policies or the certificates of insurance issued thereunder and that the group policies and certificates did not terminate upon such sale. This conclusion is the basis of appellant's first point. The point is sustained. The provision above quoted is clear and unambiguous. Bradley v. Prudential Insurance Co., 9 Cir., 70 F.2d 988.

Such language "affords no basis for invoking the just and well established rule that it is to be construed either most favorably for the insured or most strongly against the company." General American Life Ins. Co. v. Rios, 139 Tex. 554, 164 S.W.2d 521, 523.

The phrase "termination of employment" as used in such provision refers to a status—or rather the end of a status—the complete severance of the relationship of employer and employee and not to a contract of employment. Edwards v. Equitable Life Assurance Soc. of United States, 296 Ky. 448, 177 S.W.2d 574.

That no such relationship could exist between appellees and the Electric Company after the Electric Company had sold its transportation system to the El Paso City Lines, Inc., a distinct and separate legal entity by which plaintiffs were there-

after employed, is apparent. See: Beecey v. Travelers Ins. Co. 267 Mass. 135, 166 N. E. 571; Hoebel v. Travelers Ins. Co., 275 Ill.App. 551.

Such provisions terminating such insurance on termination of employment are valid and have been enforced in this and other jurisdictions. Lewis v. Connecticut General Life Ins. Co., Tex.Civ.App., 94 S.W.2d 499 (Writ Refused); Pan American Life Ins. Co. v. Welch, Tex.Civ.App., 74 S.W.2d 408 (Writ Dismissed); Connecticut General Life Ins. Co. v. Horner, Tex.Civ.App., 21 S.W.2d 45 (Writ Dismissed); Schooley v. Metropolitan Life Ins. Co., Tex.Civ.App., 77 S.W.2d 886; Annotations, 50 A.L.R. 1286, 55 A.L.R. 1253, 63 A.L.R. 1036, 85 A.L.R. 1467, 105 A.L.R. 419.

The group policies insured new employees of the Employers from the time such new employees entered the employment of the employers, began to work, and became members of the Association. Premiums were deducted from the employees' wages each month and paid by the Electric Company and later by the El Paso City Lines, Inc., to the Association and the total monthly premiums were paid by the Association to the Insurance Company. The group policies provide that the Association shall report to the Insurance Company promptly after the fifth day of each month the names of all persons ceasing to be eligible for insurance, since the fifth day of the preceding month, with the date when each person ceased to be eligible, and that upon such notice, the pro rata unearned premium shall be returned to the Association. They also contain the following clause:

"This insurance is for one month from August 5th, 1925 (in Policy 120A—from November 5, 1926) and is issued in consideration of the payment in advance of the sum of Two Hundred Fifty-six and 47/100ths Dollars (in Policy 120A—Two Hundred Twenty-seven and 84/100ths Dollars) and it may be renewed by the said Assured each month thereafter by the payment in advance on or before the anniversary of the date hereof of a monthly premium, the amount of which shall be fixed by the individual lives in accordance with the schedule of rates on the second page hereof, reserving to the Company the right to amend the said schedule of rates at the end of each five year period from the date hereof."

A grace period of thirty-one days was given for the payment of every premium after the first. On termination of employment or membership in the Association, the employees were given the privilege of converting their insurance into a policy of life insurance in any form customarily issued by the Insurance Company without evidence of insurability, upon applications made to the Insurance Company within thirty-one days after such termination. The yearly premiums under the schedule of rates referred to varied each year with the age of the employees.

L. A. Goodman was appellant's general agent in El Paso and collected the premiums for it. He had knowledge of the sale of its transportation system by the Electric Company to the El Paso City Lines, Inc. prior to his receipt of the January 1944 premium. He collected the monthly premiums specified in the group policies on January 7, February 16, and March 9, 1944. On March 13, 1944, he notified the Insurance Company of the sale and advised it that a number of former employees of the Electric Company carrying insurance under the group policies through the Association were then employed by the El Paso City Lines, Inc. and that the Association had amended its constitution and by-laws so as to include employees of the El Paso City Lines, Inc. in order that they might receive the same benefits as in the past. Since the sale, Goodman had been negotiating with the Association for a new contract of group insurance which would include the employees of the El Paso City Lines, Inc. When he notified the Insurance Company of the sale, appellant immediately advised him that it would not be willing to amend the contract so as to cover members of the Association who were employees of the El Paso City Lines, Inc., called his attention to the provision for conversion, and stated that if their employment terminated prior to March 5th, the company would allow a period of thirty-one days from that date in which such employees might ex-

ercise their privilege of conversion since the premiums were paid until March 5th. Goodman immediately requested appellant to continue the insurance provided by the group policies so that he might consummate the new contract for group insurance which he had been negotiating with the Association. A great deal of correspondence between Goodman and appellant ensued which resulted in a letter from Goodman to the Chairman of the Association dated April 3, 1944, in which he advised that "Remittance from your Association for the monthly premiums effective April 5, 1944, covering all members of the Association carrying group insurance pays their insurance to May 5, 1944", and that the Insurance Company "Must adhere to the conversion provision" of the group policies. The court found that plaintiffs and each of them paid their premiums from January through July 1944 believing that the master policies and the certificates of insurance were still in force unaffected by the sale. Goodman's letter of April 3rd was the first intimation so far as the record shows, that any of appellees or the Association had of the Insurance Company's intention to repudiate the contracts of insurance. On acquiring knowledge of the sale from Goodman, appellant did not offer to return the premiums which he had collected. It has at no time offered to return any of the premiums which he collected for it from January through July 1944. On August 1, 1944, Goodman by letter notified the Secretary of the Association that appellees' certificates would be cancelled as of August 5, 1944.

Appellant's second point is to the effect that the carrying of the policies by it from January 1, 1944 to August 4, 1944 under the circumstances did not constitute any waiver of the terms of the contracts and that appellees' pleas of waiver or estoppel are unavailable to them.

■■ No question of waiver or estoppel is presented. By the express terms of the group policies, the insurance covered the employees of the named employers only. By the provision of the certificates above quoted, this coverage terminated when such employment terminated. Appellees seek to create and establish a liability which does not exist under the original contracts of insurance. That this can not be done by waiver or estoppel is settled in this and other jurisdictions. Massachusetts Bonding & Ins. Co. v. Dallas Steam Laundry & Dye Works, Tex.Civ.App., 85 S.W.2d 937, (Writ Refused); Annotation 113 A.L.R. 857.

However, the Insurance Company, after it received notice of the sale and notice that a number of the former employees of the Electric Company were then employees of the El Paso City Lines, Inc. by Goodman's letter of March 13, 1944, retained premiums for January, February and March 1944, the amounts of which were fixed by the group policies. It is immaterial whether Goodman's prior knowledge of the sale was imputable to the Insurance Company as found by the trial court. When, with knowledge of these facts, the Insurance Company retained such premiums, it ratified Goodman's action in accepting them. By such action, it by necessary implication agreed that all of the provisions of the group policies and the certificates, except that the insurance coverage therein provided should extend to the employees of the employers named therein only and should terminate on the termination of such employment, should apply to former employees of the Electric Company who were then employees of the El Paso City Lines, Inc. In other words, new contracts of insurance with the Association and with former employees of the Electric Company who were employees of the El Paso City Lines, Inc. must be implied. One of the provisions of these new contracts was the privilege of renewal each month on payment of premiums as specified in the original contracts. Since these premiums were tendered in accordance with the terms specified, the Insurance Company had no right to cancel the new contracts, at least so long as appellees were employees of the El Paso City Lines, Inc. and members of the Association. Its attempted cancellation was wrongful.

■■ Appellant's fourth point and appellees' cross-assignments deal with the measure of damages. We need not concern ourselves with the interesting and

vexatious question of what would have been the correct measure of damages had all of appellees sought to recover for breach of their contracts. That such question has not been definitely answered by our Supreme Court is indicated in National Life Co. v. Stegall, 140 Tex. 554, 169 S.W.2d 155, loc.cit. 158. The conflict of authority in other jurisdictions is referred to in 29 Am. Juris., page 287, § 314, and illustrated in Annotations in 48 A.L.R. 111 and 107 A. L.R. 1235. As above stated, all of appellees except Breckenridge and Glass by their trial amendment elected to rescind their contracts because of the Insurance Company's wrongful breach and repudiation thereof and to recover the premiums paid by them prior to such repudiation with interest. That they had a right to so elect is unquestioned. Where the obligor in an insurance contract repudiates the obligation without just excuse and the insured elects to rescind the contract because of such repudiation, this court has held that he may recover the amount of premiums paid with interest from date of payment. American National Ins. Co. v. Wilson, Tex.Civ.App., 176 S.W. 623; Merchants Life Ins. Co. v. Lathrop, Tex.Civ.App., 210 S.W. 593. These holdings are in accord with decisions of the Supreme Court. See authorities cited in the opinions of this Court in the two cases above cited and XII Texas Law Review, pages 251–272.

■ In fact, the recovery in such cases is not for damages at all; it is for reimbursement for sums paid under a contract which has been rescinded. The contracts which the Insurance Company breached, repudiated and attempted to cancel, were the implied contracts which arose subsequent to January 1, 1944. These were the only contracts which appellees could elect to rescind and the only premiums paid under such contracts were the premiums paid subsequent to January 1, 1944. All liability under the contracts which existed prior to January 1, 1944 (except as to appellees' privilege of conversion not here involved) expired by their own terms when appellees ceased to be employees of the employers named therein—ceased and terminated as effectively as if appellees had surrendered

their certificates and executed a release of all liability thereunder and under the group policies. Recovery for all of appellees except Breckenridge and Glass must be limited to the sums deducted from their wages subsequent to January 1, 1944 and applied by the Association to payment of premium subsequent to such date, with interest from date of payment at the legal rate of six percent per annum. Supreme Lodge, K. P. v. Mims, Tex.Civ.App., 167 S.W. 835, loc. cit. Motion for Rehearing, 842 (Writ Refused).

As above indicated, Breckenridge and Glass each sought to recover damages because of the Insurance Company's repudiation of their contracts and the breach thereof, both present and anticipatory. Each of the group policies contains a "Permanent Total Disability Benefit" clause which provides that the Insurance Company will begin making payments three months after receipt of due proof of disability (among other plans at the option of the employee) of sixty monthly installments at the rate of $18.00 per $1,000.00 of insurance. Breckenridge and Glass by the trial amendment each elected to claim the disability benefits under this plan.

■ Since the Insurance Company repudiated the contracts, it waived the making of any character of proof of any disability. Pan American Life Ins. Co. v. Welch, Tex.Civ.App., 74 S.W.2d loc.cit. 412; 24 Tex.Jur. § 292, pages 1111–1114. The earliest possible dates that such proof could have been made were the respective dates of disability as found by the court, i.e. Breckenridge October 5, 1944, Glass July 30, 1945. Therefore, the Insurance Company's obligation to begin making monthly payments three months after receipt of due proof of disability requires such payments to begin three months after such respective dates of disability. Under the rule enunciated in Pollack v. Pollack, Tex. Com.App., 39 S.W.2d 853, which we think applicable to the measure of damages sought by Breckenridge and Glass and which was approved in Universal Life & Accident Ins. Co. v. Sanders, 129 Tex. 344, 102 S.W.2d 405, recovery should be for all unpaid monthly payments of $18.00 begin-

ning three months from the respective dates of disability as found by the court and maturing up to the date of judgment with interest thereon from the due date of each payment to the date of judgment at the rate of six percent per annum; and the present worth of the remainder of the sixty monthly payments to become due under the contracts after date of judgment. In computing the present worth of such future payments, same should be discounted to their present worth at the date of judgment at six percent interest per annum. From such recovery should be deducted the premiums falling due from August 5, 1944 to the respective dates of disability as found by the court.

The judgment is reversed and the cause remanded to the trial court with instructions to make or have made the necessary computations and enter judgment in accordance with the views herein expressed.

Reversed and remanded with instructions.