## CONNECTICUT GENERAL LIFE INS. CO. v. HORNER et al. (No. 3240.)

Court of Civil Appeals of Texas. Amarillo. May 22, 1929.

Rehearing Denied June 29, 1929. Application for Writ of Error Dismissed for Want of Jurisdiction Nov. 6, 1929.

C. H. Voorhees, of Hartford, Conn., and Madden, Adkins & Pipkin, of Amarillo, for appellant.

Fletcher & Bishop, of Amarillo, for appellees.

JACKSON, J. The plaintiff, Mrs. J. J. Horner, surviving wife of Julius Horner, deceased, instituted this suit in the district court of Potter county, Tex., against the defendants, the Connecticut General Life Insurance Company, the Gulf Oil Corporation, and the Gulf Production Company.

Plaintiff alleges:

That she is a resident citizen of Potter county, Tex., and that her husband, Julius Horner, died intestate in Potter county, Tex., on June 28, 1926, leaving no child or descendant surviving him. That no administration was had on his estate and none was necessary.

That the Connecticut General Life Insurance Company is a corporation, duly and legally incorporated under the laws of Connecticut and doing a general life insurance business in Texas. That the Gulf Oil Corporation is duly and legally incorporated under and by virtue of the laws of Pennsylvania and doing a general petroleum business in Texas, through the Gulf Production Company, a Texas corporation, and a subsidiary of the Gulf Oil Corporation.

That the plaintiff's husband, at the time of his death, had been in the continuous and uninterrupted employment of the Gulf Production Company, the subsidiary of the Gulf Oil Corporation, as a tool dresser for a period of more than seven years. That as a part of the consideration paid for the services rendered by her husband and other employees to the Gulf Production Company, the Gulf Oil Corporation, the parent company, contracted with the Connecticut General Life Insurance Company for what is known as group insurance for the benefit of employees of the Gulf Oil Corporation and its subsidiaries. That by virtue of said contract, the Connecticut General Life Insurance Company, for a valuable consideration, issued and delivered to the Gulf Oil Corporation, on November 12, 1918, an insurance policy covering the lives and total permanent disability of the employees, including the deceased, of said Gulf Oil Corporation and its subsidiaries. That said policy was for the benefit of the deceased during his lifetime and for the benefit of plaintiff after his death. That the insurance company thereafter issued applications, rate tables, rider supplements, or amendments, a copy of each of which affecting the rights of plaintiff are attached to and made a part of her petition.

The plaintiff pleads the effect of her contract, applications, rider amendments, etc.

The policy provides, substantially, that the

insurance company will, on proof of the death of an employee of the Gulf Oil Corporation, or its subsidiaries (called employer), or on proof of the permanent total disability, as defined in the policy, of such employee, pay to such employee or his beneficiary the sum specified in the schedule in the policy, if the death of such employee occurs, or his total permanent disability begins, while he is covered by the terms of the policy. The policy provides for its renewal from time to time, that the employer shall pay the premiums; that the insurance company will issue to the employer, for delivery to each employee, an individual certificate setting forth a statement as to the insurance protection such employee receives; the right of the employee, within 31 days of the termination of his employment with the employer, to convert such insurance to individual insurance; that the policy, the applications, and any written supplements made thereto, shall constitute the contract of insurance.

The policy, as amended or supplemented, so far as its provisions are material to a consideration of this appeal, reads as follows:

"Plan of Insurance.

"Schedule of Amount of Insurance on Each Life.

"In continuous service less than one year, None.

"In continuous service one year, but less than two years, $1,000.00

"In continuous service two years, but less than three years, $1,250.00

"In continuous service three years, but less than four years, $1,500.00

"In continuous service four years, but less than five years, $1,750.00

"In continuous service five years, but less than six years, $2,000.00

"In continuous service six years, but less than seven years, $2,250.00

"In continuous service seven years or more, $2,500.00

"The above schedule shall apply to all employees now in service or hereafter to be hired who qualify by length of continuous service, irrespective of health or physical condition at the date of this policy or at the time when new insurance or an increase in old insurance becomes effective, and irrespective of whether such employee is on or off duty at such time or times.

"If any employee leaves the Employer's service and enters the service of any other corporation, firm or individual even temporarily, his period of continuous service shall thereupon terminate.

"In the case of any employee absent from duty through ill-health, lay-off or other cause, and not employed elsewhere during such absence, the Employer shall have the sole right to determine whether he shall be considered as continuing in its service, and therefore, whether he shall be covered, or his coverage continued, under this contract. * * *

"The insurance on any employee shall cease with the termination of his employment, except as hereinafter provided. If an employee is disabled, and is unemployed elsewhere, or is temporarily laid off or given leave of absence, the insurance may be continued at the option of the Employer, provided the insurance is continued on all whose absence began at the same time. * * *

"Total Disability. Any employee shall be deemed to be totally disabled within the meaning of this policy if injuries, sickness or disease continuously prevent him from performing any and every duty pertaining to his occupation.

"Permanent Total Disability. If said total disability began before age 60 and presumably will during his life prevent the employee from pursuing any occupation for wages or profit; * * * he shall be deemed to be totally and permanently disabled within the meaning of this policy. * * *

"Premiums. All premiums are payable in advance at the Home Office of the Company in Hartford, but may be paid to an authorized agent of the Company in exchange for a receipt, signed by the Secretary and countersigned by said agent. If any premium be not paid when due, this policy shall be terminated except as herein provided.

"Grace. Thirty-one days of grace will be allowed for the payment of every premium after the first, during which period the policy remains in force. * * *

"Manner of Payment of Claims.

"It is specifically agreed that the amount of insurance on any life shall not be payable in one sum at death but that it shall be payable in installments as follows: One Hundred Dollars on receipt of due proof and the remainder in twelve equal monthly installments without interest, within one year after death, the first of said twelve monthly installments to be payable one month after death. The due dates of the twelve monthly installments shall be computed as beginning one month from the date of death and in case of delay arising in any claim the first payment shall include all installments which shall then have thus accrued under the claim."

Plaintiff alleges: That about June 24, 1926, while her husband was employed by the Gulf Production Company, a subsidiary of the Gulf Oil Corporation, he received physical injuries which totally incapacitated him from performing any and all duties pertaining to his occupation as a tool dresser. That such injuries permanently and totally disabled her said husband from pursuing any occupation for wages or profit. That on account of such injuries, his employers laid him off on a temporary leave of absence, which continued until his death. That his employers exercised

the option which was provided for in the contract of insurance and retained him in their employ, had the premiums paid and kept him fully covered and insured under said policy until his death on June 28, 1926. That his employers were, by said policy, constituted the sole agent of the insurance company to determine whether an employee should be retained in their employ and covered by such insurance. That the employers of her husband, acting as sole agent for the insurance company, and in the exercise of such option, did retain her husband in their employ and kept him fully covered by insurance under the provisions and terms of said policy. That while the policy provided that the employer should pay all premiums, the plaintiff and her husband were advised, after the injuries received by her husband which permanently and totally disabled him, that plaintiff and her husband should pay the premiums for his protection under such policy and required that they pay to the employer the amount of premium necessary to keep her husband protected under the terms of said policy. That they did pay such premiums, the employer accepted the payment thereof and forwarded and paid to the insurance company the premiums necessary to keep her said husband protected under said policy, and that the insurance company accepted the payment of such premiums with full knowledge as to the source of their payment and her husband's condition of permanent total disability. That by reason of the facts alleged, the insurance company waived all rights to forfeit plaintiff's right to recover under said policy and is estopped from denying plaintiff's right to recover thereunder.

The plaintiff pleads that her husband was injured while in the employ of the Gulf Oil Corporation and its subsidiaries, that his death occurred while so employed, and alleges that she and her husband fully complied with all the terms and conditions of said policy to keep it in full force and effect; and that all of the defendants, including the insurance company, failed and refused to pay to her the $2,500, the amount due under the plan of insurance in said policy. She also sought to recover interest and attorney's fees.

Plaintiff's pleadings, together with the exhibits, are very voluminous, but the foregoing we think is a sufficient statement to dispose of the appeal.

The Connecticut General Life Insurance Company answered by general demurrer, general denial, and specially denied that the death of Julius Horner occurred while employed by the Gulf Oil Corporation or its subsidiaries, or that he received injuries which permanently and totally disabled him from pursuing any occupation for wages or profit while so employed.

It alleges: That about the 15th of December, 1925, Julius Horner was definitely released from the service of said Gulf Companies without further employment or pay, and that he was not retained in the service of the Gulf Companies thereafter, nor employed or paid by said companies at the time of his death. That he did not, in the course of his employment for said companies, receive injuries which prevented him from pursuing any occupation for wages or profit, but that after he left the employment of the Gulf Companies about December 15, 1925, he worked and earned wages in other employment and at the time of his death, was employed as an automobile mechanic in Amarillo, Tex., by the Irvin Motor Company. That he did not continue in the continuous and uninterrupted employment of the Gulf Companies. That the said Julius Horner and the plaintiff were entitled to recover on said policy subject to the terms and conditions thereof, with which they have failed and refused to comply. Said defendant pleads the provisions of the policy set out and also pleads the provision reading as follows: "At the termination of the employment of any employee for any reason whatsoever, the Company will, without further evidence of insurability, upon written application made to the Company within thirty-one days after such termination, and upon payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, issue a policy of life insurance in any one of the forms customarily issued by the Company, except term insurance, with equivalent total and permanent disability benefits, in an amount equal to the amount of the employee's protection under this policy at the time of the termination of his employment."

That under such provision, it was incumbent upon the said Julius Horner to take affirmative steps, after his service with the Gulf Companies ceased, to secure the benefits provided in the policy and prevent such benefits from lapsing. That his services with said company having ceased on or about the 15th day of December, 1925, and he having at no time complied with the conversion terms of said policy, the plaintiff was not entitled to recover under the terms and conditions thereof. That if the plaintiff or her husband paid any premiums after December 15, 1925, this defendant had no knowledge or notice thereof, and that by reason of the fact that his employment with the Gulf Companies had terminated, the policy automatically canceled unless he exercised the conversion privilege as provided in the paragraph of the policy above set out.

It is alleged that, in any event, no premiums were paid either by plaintiff, her deceased husband, or his employers, that kept the policy in force after June 15, 1926. For

all of which reasons, it asserted that plaintiff was not entitled to recover under the policy.

No citation was served on the Gulf Oil Corporation and it was therefore dismissed from the suit.

On special issues submitted by the court in his main charge, the jury found, in substance, that the plaintiff and her husband paid to the Gulf Production Company premiums to keep the policy of insurance in force until June 15, 1926; that while Julius Horner was employed by the Gulf Production Company, he received injuries that continuously prevented him from performing any and every duty pertaining to his occupation; and that while so employed, he received injuries which prevented him from pursuing any occupation for wages or profit during the balance of his life.

The court defined "occupation" to mean a regular business, trade, or employment.

In response to a special issue submitted by the court at the request of the defendant, the jury found that at the time Julius Horner sustained the injuries which resulted in his death on June 28, 1926, he was an employee of a corporation, firm, or individual other than the Gulf Oil Corporation or its subsidiaries.

On these findings, the court rendered judgment in favor of the Gulf Production Company against the plaintiff, and in favor of the plaintiff against the Connecticut General Life Insurance Company for the sum of $2,500 principal, $247 interest, and costs of suit, with interest on the principal at the rate of 6 per cent. per annum from the date of the judgment. From this judgment, the Connecticut General Life Insurance Company prosecutes this appeal.

We deem it unnecessary to consider separately the 24 propositions based on the 46 assignments of error in the brief of appellant. The propositions in various forms urge as error the action of the trial court in refusing its requested peremptory instruction and rendering judgment on the findings of the jury on the issues submitted in the court's main charge, because: First, the evidence was insufficient to warrant the submission of any of the issues contained in the court's main charge; second, the testimony was not sufficient to support the findings of the jury on any of said issues; and, third, under the contract of insurance, the evidence offered, and the findings of the jury, the court was not authorized, under the law, to render a judgment for the appellee Mrs. J. J. Horner.

The contract of insurance provides: That the insurance company will pay to the employees "who qualify by length of service" with the Gulf Oil Corporation or its subsidiaries, the sum of money stipulated in the schedule or plan of insurance, provided that before the age of 60 "death occurs or permanent total disability begins while the employee is covered under the terms of this policy"; that if any employee leaves the service of such employer and enters the service of another, "even temporarily, his period of continued service shall thereupon terminate," but if such employee is absent from duty from any cause "and not employed elsewhere during such absence," the employer shall have the sole right of determining whether or not such employee shall be considered as continuing in its service and covered by this policy; that the insurance of an employee shall cease with the termination of his employment unless such employee is disabled and unemployed elsewhere or is temporarily laid off or given leave of absence; if so, the insurance may be continued at the option of the employer, provided it is continued on all those whose absence began at the same time.

Under these provisions, for plaintiff to recover it was necessary to show that the death of her husband occurred, or that permanent total disability began, while he was employed by the Gulf Companies, or that at such time he was laid off or given leave of absence by such companies and "not employed elsewhere during such absence," and in addition thereto, that during such lay-off or, leave of absence his insurance was protected by his employer.

The policy makes no provision to pay for total disability unless such total disability is permanent. Total disability, "within the meaning of the policy," is such as will continuously prevent the employee from performing any and every duty pertaining to his occupation. The employee "shall be deemed to be totally and permanently disabled within the meaning of this policy" if his total disability began before he reached the age of 60 and "presumably will, during his life, prevent the employee from pursuing any occupation for wages or profit."

The testimony discloses: That Julius Horner was 38 years old when he died. That he began his service with the Gulf Production Company on the 1st day of June, 1918, as a tool dresser. That while engaged by said company, on June 24, 1924, he received an injury on the knee, knocking his kneecap off and cutting the ligaments in his leg. That after he was treated and his leg operated on, he went on crutches for nearly a year and later had a brace made that enabled him to walk without crutches. That he was never able, after his injury, to follow his occupation as a tool dresser. That the Gulf Production Company, after he had reached his maximum recovery, put him to work in its shops at Breckenridge, where he worked for six weeks as a mechanic, drawing the wages of a mechanic. That the other employees objected because he was not a skilled mechanic and he decided to go to an automobile school in Kansas City and qualify himself as an expert mechanic. That he got permission of his employer to attend the automobile school, and

in January, 1926, went to Kansas City and attended the automobile school until some time in May. That he was advised by his employer that in order to keep up his insurance on the policy here involved, he would have to pay to his employer the premiums so the employer could forward to and pay the insurance company such premiums. That the plaintiff and her husband paid said premiums and they were forwarded to the insurance company, as the jury found, until June 15, 1926. That on April 3, 1926, he wrote the Gulf Production Company from Kansas City that he noticed in the papers the company was starting lots of work and requesting that if the company put a shop and garage in Panhandle, that he be given a chance at anything except working on a rig, because he was unable to do that work. That he had taken up vulcanizing and battery work and was then working in a garage. That on May 18th he wrote the same company from Kansas City that he was figuring on coming back in about a week, asking for a position in the garage line anywhere in the district; that he knew all about Fords, batteries, vulcanizing, and had worked on several Dodges and Buicks. The company advised him that it did not know whether there would be an opening he could fill or not, but that it expected to find him a job as soon as he was able to go to work. That he returned from the automobile school, but the Gulf Production Company had no position open that he could fill, and that he went to work for the Cooper-Irvin Motor Company about the 7th of June. That he continued to work for such company for 12 or 13 days, when he received an injury to his hand, which became infected and caused his death. That during the time he was employed by the Cooper-Irvin Motor Company, he was not on the pay roll of the Gulf Production Company, but was receiving wages from the Cooper-Irvin Motor Company.

There is no testimony tending to show that the death of appellee's husband was caused by or contributed to by the injury he received to his knee on June 24, 1924, while in the employ of the Gulf Production Company.

■ Under the provisions of the policy, appellee could not recover for the death of her husband because the jury found that he was not in the employ of the Gulf Production Company when his death occurred, and this finding is supported by the uncontroverted testimony. The finding of the jury that the husband of appellee received injuries while in the employ of the Gulf Production Company which prevented him from pursuing any occupation for wages or profit during the balance of his life is not supported by the testimony, the evidence showing without controversy that after said injuries were received, he worked in the shops at Breckenridge as a mechanic for 6 weeks and drew wages as a mechanic; that while in Kansas City taking his course in the Swinney Automobile School, he did some work on automobiles in addition to that required for his course; that he had been working for the Irvin Motor Company in Amarillo for 12 or 13 days immediately preceding the injury which resulted in his death; that he drew wages from said automobile company in Amarillo, and there is no testimony tending to show that he could not successfully pursue the work of an automobile mechanic and did not successfully pursue that work while engaged by the Irvin Motor Company. Said finding of the jury is in conflict with the finding that at the time of his death he was in the employ of the Irvin Motor Company at Amarillo, Tex., which was an institution in no way connected with the Gulf Oil Corporation or its subsidiaries.

■ The contention of appellant that the policy lapsed for failure to pay premiums is not tenable, because the finding of the jury that the premiums were paid to June 15, 1926, has sufficient support in the testimony, and if appellant was otherwise bound under the insurance policy, the proper payment of the premiums to that date would continue the policy in force and effect for a period of 31 days, as the insurance contract provides that 31 days' grace will be allowed for the payment of every premium after the first, during which time the policy remains in force, and as appellee's husband died on June 28, 1926, the 31 days of grace had not expired.

■ The contention of appellant that the husband of appellee was not covered by the policy because he failed to exercise the conversion privilege provided for in the policy is without merit. The policy stipulates that the company will issue to the employer, to be delivered to each employee covered by the policy, an individual certificate setting forth a statement as to the insurance protection to which such employee is entitled and that said certificate shall contain the provision of the policy allowing the conversion of group insurance into individual insurance, giving 31 days after the termination of the employment for the insured to take advantage of such conversion privilege. The certificate furnished by the insurance company to the Gulf Production Company to be delivered, and which was delivered to appellee's husband, contains no reference to the conversion privilege of the policy, and neither plaintiff nor her husband could be bound by a provision of the policy of which the insurance company had contracted to give notice and which notice it had failed to give.

■ The testimony in the case was, in our opinion, sufficient to raise an issue of fact upon appellee's plea of waiver and estoppel, but no issue on such plea was submitted to the jury, no objection was made to the failure to submit such issue, and no such issue requested by appellee; hence, any right of ap-

pellee to recover under such plea of waiver and estoppel was waived. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

The judgment is reversed and the cause remanded.