## McCLENDON v. SOUTHWESTERN LIFE INS. CO.
### No. 13452.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 13, 1936.

Jack C. Burroughs, Andrew Priest, and Leslie Thomas, all of Dallas, for appellant.

Hamilton, Lipscomb & Wood, of Dallas, for appellee.

DUNKLIN, Chief Justice.

J. L. McClendon sought a judgment against the Southwestern Life Insurance Company for an amount alleged to be due under two life insurance policies, in the principal sum of $1,000 each, issued to him by that company as an employee of the Dallas Railway Company. The first policy is dated June 16, 1926, and the second June 18, 1926.

Defendant issued to the Dallas Railway Company a group insurance policy for the benefit of its employees, also separate policies to members of the group, including plaintiff.

The cause of action was based on the terms of the group policy and also on the two policies in plaintiff's favor issued thereon. Each of the two policies issued in plaintiff's favor contained this provision: "Total and Permanent Disability Benefit: If any employee shall furnish the Company with satisfactory proof that while insured under this policy and before having attained the age of sixty, he has become wholly disabled by bodily injuries or disease, and presumably will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the Company will waive further payment of premium as to such Employee and pay in full settlement of all obligations to him under this policy the amount of insurance in force hereunder upon his life at the time of the approval by the company of proofs of such disability, in a fixed number of instalments chosen by the Employer from the following table, the first instalment to be paid immediately upon approval by the Company of proofs of such disability."

The group policy also contained a provision to the same effect in favor of the employees of the Dallas Railway Company, with this further provision: "Individual Terminations.—It is also understood and agreed that if any employee shall leave the active service of the Employer the insurance hereunder as to any such employee shall terminate with the termination of his employment and that upon the return of the card representing such individual insurance with the form thereon entitled 'Notice of Discontinued Employment', properly filled out and signed by the Employer, the unearned premium paid on account of such insurance shall be returned by the Company; provided, however, that if termination of employment is caused by disability of the employee, such termination shall not affect the payment of any disability benefits to which the employee may have theretofore become entitled hereunder."

According to allegations in plaintiff's petition, he was an employee of the Dallas

Railway Company and continued in that employment until January 19, 1932, at which time he was discharged from service by his employer, and at that time his two policies of insurance were in full force and effect; the premiums thereon having been fully paid. He further alleged that during the last years of his employment he was in bad health, generally, had suffered from a disease known as syphilis for a period of about 20 years, which was aggravated by his continual standing on his feet while working as a motorman for 19 years, and by reason of all of which he was totally and permanently disabled when he was discharged by the railway company on January 19, 1932. Plaintiff further alleged that his discharge occurred before he had attained the age of 60 years, and at the time of his discharge he had become wholly disabled by bodily disease and presumably will be permanently, continuously, and wholly prevented thereby for life from engaging in any occupation or employment for wages or profit, proof of which he had furnished the defendant, but payment had been refused.

It was further alleged that the plaintiff offered to furnish further proof, if the first furnished was unsatisfactory, to the defendant, but said offer was rejected arbitrarily and without just cause.

A recovery was sought for the face of the two policies and also for the statutory penalty and attorney's fees.

In addition to a general demurrer, a general denial, and special exceptions to plaintiff's petition, defendant pleaded specially that plaintiff was not disabled at the time his employment with the railway company was terminated by his discharge, and therefore under the terms of the contracts his insurance then ceased, and defendant could not be held liable for any disability thereafter occurring, if he subsequently became disabled. And further plaintiff waived his right to claim the insurance by reason of his failure to furnish proof of his disability from employment—which delay was unreasonable.

Upon trial of the case, the jury returned findings as follows:

1. Plaintiff J. L. McClendon was permanently, continuously, and totally disabled at the date of his leaving the employment of the Dallas Railway Terminal Company.

2. Defendant had notice and demand for payment to plaintiff thirty days prior to filing of his suit.

3. Defendant in unconditional terms breached its contract of insurance, and plaintiff could reasonably anticipate that such breach of contract would continue in the future.

4. Five hundred dollars is a reasonable cash attorney's fee for services rendered plaintiff in prosecution of his suit.

Thereafter the court overruled plaintiff's motion for judgment in his favor on the verdict for the face of the policies plus the statutory penalty of 12 per cent. thereof and an attorney's fee of $500, and upon defendant's motion therefor, rendered judgment non obstante veredicto, denying plaintiff any recovery. Plaintiff excepted and has prosecuted this appeal.

■ The rendition of the judgment notwithstanding the verdict was because of the conclusion reached by the court that the evidence adduced was insufficient as a matter of law to support the first finding of the jury shown above; and it is our conclusion that the court did not err in that ruling for the reasons hereinafter stated. We are not unmindful of the settled rule of decisions in this state that in order to justify that action of the court, full faith and credit must be given to all competent evidence reasonably tending to support the jury's finding to the exclusion of all other evidence to the contrary; and it must appear from the evidence so considered that no other reasonable conclusion could have been reached than the one reached by the trial court. Vernon's Ann.Civ.St. art. 2211; 3 Tex.Jur. § 741, p. 1049, and decisions there cited.

Plaintiff testified that he had not done any work for the railway company since December 20, 1931; that he was discharged by the railway company January 19, 1932, and he did not furnish to defendant proof of loss until October 16, 1934. According to his further testimony, in June, 1934, he enlisted for six months employment with the CCC Government Agency, and after a short service re-enlisted and served a month and a half. His statements made in his application for that service were true as far as he knew. His application for that employment, signed by him and introduced in evidence, includes these statements: "In my judgment I am physically able to perform ordinary manual labor in

a work camp. To the best of my knowledge and belief I have no active or communicative disease."

He testified as follows: "In 1913 or 1914, I had taken some treatment for syphilis and some shots in the arm. I do not know what brought about my discharge from the company. Before I left I had been bothered with rheumatism in my side and back and hips and legs; also my hearing and eyes bothered me and continued to suffer with them after I left; wasn't able to do any work and am not now able to work."

According to his further testimony he had worked for the Dallas Railway Company for 19 years, having gone to work for it in the year 1913; he was married on Christmas Eve of the year 1931 before his services with the railway company were terminated; and was first treated for his disease, syphilis, by Dr. Gilbert in 1919 or 1920. He further testified that he had influenza about ten years before, but did not know how many times he had been sick since that time; that while in the employment of the CCC he was not able to do more than carry water and build fires, for which he drew from $30 to $36 per month.

In support of its assignments of error to the court's action, appellant has cited his testimony copied above, and in addition thereto the testimony of Dr. Kilgore, who was first called to treat him on September 12, 1934, and who examined him one month later, just prior to the institution of this suit; and also the testimony of Dr. Schoch, witness for appellee. Dr. Kilgore testified that when he examined the plaintiff he found his blood pressure low, his pulse slow; the pupils of his eyes irregular, and his knee jerks active; his hearing not good; a Wasserman test made of his blood showed a four plus positive; he did not talk as clearly or think as fast as a man usually did; that while Tabes affects the lower part of the spinal column, it renders the patient unable to determine where his feelings are, being results in most cases from syphilis; but plaintiff had not reached that stage, and witness was unable to say definitely that he will develop it, although he has early signs that he may; if plaintiff has had rheumatism for 20 years it is possible he may improve; that a man who can walk only a limited distance is certainly disabled. According to the testimony of Dr. Schoch, a person suffering

from syphilis usually becomes totally disabled in ten to twenty-five years after it is acquired. It is one of the most insidious diseases to the point of destruction of the tissues that medical authorities have to cope with, and there is no part of the body that it may not attack. And in its primary stages it is impossible to tell what portion of the body it will attack; when it attacks the nervous system, its course, without treatment, is usually downgrade from year to year. He further testified: "Assuming a man's case was diagnosed as syphilis, in 1914, and given one of the series of treatments, Six-O-Six injections and nothing further was done and 20 years later, 1934, he had a Wasserman done of Four-plus, by a doctor and a negative Wasserman by another doctor, I would say that indicated a persistence of the original infection most likely."

The evidence showed further that in September, 1934, which was more than two years after the termination of his employment, he was examined by Dr. J. S. Rowe upon his application for compensation from the United States Government for his services in the army, and upon that application he was allowed compensation for 15 per cent. disability under the 1925 schedule and 10 per cent. under the 1932 schedule, and according to Dr. Rowe's report on the application at that time he had no more than from 15 per cent. to 25 per cent. disability in his occupation as a street car motorman.

Neither the plaintiff nor any witness testified that at the time of his discharge he was then totally and permanently disabled for further service as a motorman.

Mr. J. L. Johnson, witness for defendant, testified that he was a division superintendent of the Dallas Railway & Terminal Company in Oak Cliff; that plaintiff had worked under his supervision and witness had more or less daily contact with him before he was discharged from the service; that plaintiff never made any complaint about being disabled and was doing his work in a satisfactory manner up to the time he was discharged; that he was discharged because he got drunk and got in jail.

C. S. Anderson and J. T. Carter, also witnesses for defendant, both testified that they were fellow employees with the plaintiff and in daily contact with him while he worked as a motorman; that they never

heard him complain of any illness, and up to the time of his discharge he was performing his work well.

Plaintiff himself testified that he rendered good service up to the time of his discharge.

Both Dr. Kilgore and Dr. Schoch testified that they could not tell upon examination of the plaintiff when he became disabled, if he was.

While plaintiff testified that he did not know why he was discharged, he did not deny that drunkenness was assigned as the reason therefor, and his failure to make such denial could properly be considered as a circumstance in the nature of an admission that that was the cause assigned.

The burden was upon the plaintiff to sustain the affirmative of special issue No. 1 by a preponderance of the evidence, and we have reached the conclusion that, viewing the testimony as a whole and considering the same in the most favorable light to the plaintiff, it was not sufficient, prima facie, to support the finding of the jury on special issue No. 1. It goes no further than to raise a mere surmise or suspicion of the existence of the fact so found, and to support that finding it would be necessary to build inference upon inference. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Waco Drug Co. v. Hensley (Tex.Com.App.) 34 S.W. (2d) 832; Northern Texas Traction Co. v. Brannon (Tex.Civ.App.) 61 S.W.(2d) 156; Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Webb v. Reynolds (Tex.Com.App.) 207 S.W. 914; Metropolitan Life Insurance Co. v. Fernandez (Tex.Civ.App.) 94 S.W.(2d) 228.

Hence, the other findings of the jury become immaterial to the disposition of this appeal. And appellee's cross-assignments of error, involving proceedings on another trial in the event of a remand of the case, will not be determined, because unnecessary.

Accordingly, appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.