Peggy L. Pittman SCHROEDER et al.,
Plaintiffs,

v.

JOHN HANCOCK MUTUAL LIFE IN-
SURANCE COMPANY, Defendant.

Civ. A. No. 10259.

United States District Court
S. D. Texas,
Houston Division.

Sept. 29, 1962.

Dyess, Dyess, Prewett & Cantey (Craig C. Cantey, Jr.) and Edwin H. Frank, Jr., of Houston, Tex., for plaintiffs.

Vinson, Elkins, Weems & Searls (Tarlton Morrow and Judson R. Wood), of Houston, Tex., for defendant.

NOEL, District Judge.

Plaintiff, Peggy L. Pittman Schroeder, is suing the defendant, John Hancock Mutual Life Insurance Company, on a policy of insurance bearing Certificate No. 520, Policy No. 335–G issued by the defendant for the principal sum of $8,000 on the life of Mr. Wayne V. Pittman, now deceased, in which policy the plaintiff, the daughter of Mr. Pittman, is the named beneficiary. Plaintiff has submitted a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on the grounds that there are no genuine issues as to any material fact and that the plaintiff is entitled to judgment as a matter of law.

The defendant issued a group insurance policy to Lykes Brothers, Incorporated, and/or affiliated and subsidiary companies covering its employees in 1928, which policy was thereafter amended from time to time. Mr. Wayne V. Pittman had been a long-time employee of Lykes Bros. and a contributor through salary deductions to the premiums under said policy. The plaintiff was the beneficiary of the policy on the life of Mr. Pittman.

Lykes Bros. decided to retire Mr. Pittman since he had reached retirement age and on December 30, 1955 a company party was held honoring retiring employees, at which time Mr. Pittman was given a check in an amount equal to one month's wages from which only Social Security had been withheld. This check was dated January 2, 1956 and according to the affidavit of Mr. J. M. Lykes, Jr., Vice President of Lykes Bros., it was given as a gratuity in line with the policy of the company to make a gratuitous payment to each retiring employee equal to one month's salary. Mr. Pittman had received a salary check dated December 30, from which all deductions had been taken, including the item "group insurance."

The method employed by Lykes Bros. for paying salaries consisted of a payment on the fifteenth of the month, entitled "Salary Advance," from which no deductions were taken; then, at the end of the month a salary check was issued from which all the deductions were taken. The method of collecting premium contributions from employees consisted of salary deductions known as "required premium contributions" from the checks given at the end of each month, which deductions were attributable to the month in which collected. In the present case, the last "required premium contribution" was deducted from the check dated December 30, 1955 and therefore was attributable to the month of December. Mr. Pittman performed no work after December 30, 1955 and according to the aforementioned affidavit of Mr. J. M. Lykes, Jr., Mr. Pittman's retirement was effective as of December 31, 1955.

On February 2, 1956, Mr. Pittman died. Written notice that Mr. Pittman's insurance was to be cancelled was not given by the employer to the defendant until March 26, 1956. Notice and proof of

death of Mr. Pittman were made to the defendant on April 10, 1956 but no part of the face amount of the policy in the sum of $8,000 has been paid to the plaintiff.

The provisions in the insurance policy entitled "Insurance to be Discontinued" and "Employee's Individual Certificate and Conversion Privilege" were amended effective as of September 15, 1949 by Amendment No. 6 which contains the following terms:

"Discontinuance of Individual Insurance. The insurance of an employee shall cease automatically on the earliest of the following dates:

"(a) the date of expiration of the period for which the last required premium contribution is made by the employee;

"(b) the date of termination of employment of the employee which shall be the date the employee ceases active work, except that

"(1) if the employee ceases active work as a result of a leave of absence, temporary lay-off, or retirement, his employment shall be deemed to continue thereafter, for the purpose of insurance hereunder, until terminated by the Employer either by written notice to the Company or by any other means, or

\* \* \* \* \* \*

"Conversion privilege. Any employee, upon written application made to the Company within thirty-one days after either

"(a) the date of termination of his employment, as hereinbefore defined, for any reason whatsoever, or

\* \* \* \* \* \*

shall be entitled to have issued to him by the Company, without evidence of insurability, an individual policy of life insurance subject to the following conditions and provisions:

\* \* \* \* \* \*

"Insurance under the converted policy shall become effective at the end of the thirty-one-day period during which application for such individual policy may be made, provided, however, that in the event of the death of the employee during such thirty-one-day period the Company shall pay to the beneficiary as a death benefit the maximum amount of insurance for which an individual policy could have been issued under this provision whether or not the employee shall have made written application for conversion.

At first blush it would appear that clause (a) under "Discontinuance of Individual Insurance" would be controlling in this case, in light of the facts that Mr. Pittman died on February 2, 1956 and the last period for which a required premium contribution was made was December of 1955. When the "Discontinuance of Individual Insurance" provision, however, is construed in its entirety, I feel that clause (a) is applicable to non-retiring employees who have decided to cease their coverage under the policy and that clause (b) is the only applicable clause for retiring employees. The correctness of the aforementioned construction becomes apparent when the "Discontinuance of Individual Insurance" provision is considered with the "Conversion Privilege" provision. The "Conversion Privilege" provision gives an employee 31 days from the date of termination of his employment, as defined in the policy, to convert the group policy to an individual policy; and, the provision further specifies that if an employee dies during this 31-day period his life insurance is still in effect even though the employee had not yet exercised the privilege of conversion.

Although the period for which the last required premium contribution is made would expire immediately prior to the beginning of the 31-day conversion pe-

riod, since contribution by salary deduction would not occur after termination of employment, nonetheless, the employee's life insurance would still be in effect if the employee died during the 31-day period. Retiring employees therefore constitute a class different from non-retiring employees under the policy. Clause (a) applies to the non-retiring whereas clause (b) applies to the retiring. Therefore, in the case before the Court clause (b) rather than clause (a) is controlling.

Clause (b) provides that the insurance of an employee shall cease on the date of termination of employment of the employee, which shall be the date the employee ceases active work unless he ceases work as the result of several things, one of which is retirement. In a situation such as retirement, the policy provides that his employment shall be deemed to continue thereafter for the purpose of insurance until terminated by the employer either by written notice to the company or by any other means.

I have been unable to find any authority on the question of construction of the termination of employment by "any other means" provision which appears in the instant group insurance policy. An exhaustive review of cases on the question of the termination of employment in group insurance policies has been compiled in 68 A.L.R.2d 8–205. This compilation does not discuss the aforementioned question, although it does discuss the question of the failure of an employer to give timely notice to an insurance company of the termination of employment under differently worded group policies of other insurance companies. On the latter question, the cases have held that the employer in failing to give the requisite notice has, in essence, elected to consider the employment of the particular employee as continuing for insurance purposes. 68 A.L.R.2d 8, 91.

 Being unable to find authority, this question is therefore considered to be one of first impression. The phrase "by any other means" should be construed, in light of its context in the instant policy, as any type of notice by the employer to the insurance company other than express, written notice. Moreover, it is my opinion that any such notice must be given for the purpose and with the intent of giving notice of the termination of employment for the purposes of insurance.

When an employee retires, therefore, the date of termination of his employment, as defined in the policy, is not always the actual date that his retirement becomes effective but will be the date that the employer notifies the insurance company by written or other type of notice when such notice occurs later than retirement. From this date of notice a retiring employee still has 31 days, the conversion period, within which his life insurance is still effective since the conversion period begins after "the date of termination of his employment, as hereinbefore defined * * *"; and the date of termination of his employment is defined as the date of notice by the employer to the insurance company in situations where such notice occurs after actual retirement.

██ Mr. Pittman's retirement became effective as of December 31, 1955. If notice by his employer was given to the defendant insurance company at that time, the conversion period commenced to run and it terminated before the death of Mr. Pittman, with the consequence that Mr. Pittman's life insurance with the defendant was not in effect at the time of his death. On the other hand, if notice was not given until several days after his retirement, the conversion period commenced to run at that time and expired after the date of Mr. Pittman's death, with the result that his insurance was at the time of his death in effect.

Written notice by the employer to the defendant was not given until March 26, 1956. The disposition of plaintiff's motion for a summary judgment therefore depends upon whether there is a disputed fact issue as to whether notice by "any other means" of the termination of employment for insurance purposes was given by the employer to the defendant; and if so, whether it was given at a time

sufficiently in advance of the death of Mr. Pittman on February 2, 1956 that the conversion period beginning thereafter would have theretofore expired.

The deposition of Miss Tamplin, who was the secretary to Mr. Banvard, the personnel officer of the employer, states that on December 23, 1955, Mr. Banvard talked with Mr. Pittman about the premium costs under a new program of Lykes Bros. concerning life insurance for retiring employees. The deposition states that Mr. Pittman thought the premiums were too high and that Mr. Banvard told Mr. Pittman he would call the defendant and have one of its representatives talk with him. The deposition also states that Miss Tamplin called Mr. Patterson, a representative of the defendant, to ask him to talk with Mr. Pittman; and, it further states that the employer always calls the defendant company when it has a retirement. Moreover, it states that Mr. Patterson came to the employer's office on December 30 and talked with Mr. Pittman and another retiring employee about the insurance.

Mr. Wallace Knight, a representative of the defendant, states in his deposition that one function of his job was to try to get retiring employees to take advantage of their privilege of converting group into individual life insurance. He also states that he talked with Mr. Pittman by phone in December of 1955 and that he was directed to do so by Mr. Patterson.

The privilege of converting the group into individual life insurance comes into being under the policy only upon termination of employment as defined in the policy. The aforementioned depositions assert that an employee of Lykes Bros. called a representative of the defendant, that the representative thereafter in December of 1955 apparently talked with Mr. Pittman about exercising his right of conversion, that the representative directed another representative of the defendant to talk with Mr. Pittman about the same matter, and that the other representative did first phone Mr. Pittman in December. In view of the discussions in December about the conversion privilege by the two representatives of the defendant, it is very possible that they were notified of Mr. Pittman's termination of employment for insurance purposes as of December 31, 1955. In any event, the aforementioned depositions along with the pleadings of the parties are sufficient to present a material fact dispute as to whether the employer, Lykes Bros., gave notice "by any other means" of Mr. Pittman's termination of employment for the purpose and with the intent of giving notice of the termination of insurance.

Plaintiff's motion for summary judgment is denied. The only existing material fact dispute is whether the employer, Lykes Bros., gave notice "by any other means" of the termination of employment of Mr. Pittman for the purpose and with the intent of giving notice of the termination of insurance, and if so, when such notice was given. All further proceedings in this action shall be directed to these two matters alone. The Clerk will notify Counsel.