**JOHN HANCOCK MUTUAL LIFE IN-SURANCE COMPANY, Appellant,**

v.

**Peggy L. Pittman SCHRODER and D. L. Schroder, Appellees.**

**No. 21776.**

United States Court of Appeals
Fifth Circuit.

Aug. 3, 1965.

Judson R. Wood, Thomas B. Weatherly, Vinson, Elkins, Weems & Searls, Houston, Tex., Tarlton Morrow, Houston, Tex., of counsel, for appellant.

Craig C. Cantey, Jr., Foreman, Dyess, Prewett, Henderson & Cantey, Houston, Tex., Wayne G. Dotson, Edwin H. Frank, Jr., Houston, Tex., of counsel, for appellees.

Before TUTTLE, Chief Judge, and BROWN and FRIENDLY,* Circuit Judges.

FRIENDLY, Circuit Judge:

The plaintiffs, claiming on a certificate of insurance issued to Wayne V. Pittman under a group life insurance policy taken out by Lykes Brothers, Incorporated, sued the defendant insurer in a Texas court to recover the face amount of the policy, attorneys' fees, and the 12% late-payment penalty provided by Texas Insurance Code, art. 3.62, V.A.T.S. The defendant removed the case to the District Court for the Southern District of Texas on the ground of diverse citizenship. Pittman had been retired from service with Lykes on December 31, 1955, and died on February 2, 1956. Plaintiffs' ability to recover depends on whether Pittman was still covered at the time of his death. Based upon its interpretation of the contract, 210 F.Supp. 756 (1962), and a finding of fact, 227 F.Supp. 622 (1964), the trial court held he was and awarded judgment for the plaintiffs, including attorneys' fees and penalty.

■ Since we agree with the District Court that clause (a) of the policy has no application, 210 F.Supp. at 758–759, decision turns on whether, before the critical date, Lykes had terminated Pittman's employment for purposes of insurance coverage "either by written notice to the [insurance] company or by any other means"—more narrowly, since written notice concededly was not given until March 26, 1956, whether Lykes had done this "by any other means." The policy is ambiguous whether "by any other means" is satisfied by notice to the employee or requires that the insurer be apprised of the employer's intention to terminate. The District Judge thought the latter, 210 F.Supp. at 759; and, under the settled rule "that in the case of doubt as to its meaning a policy of insurance should be construed strictly against the insurance company, whose language it is, and liberally in favor of the insured," Trahon v. Southland Life Ins. Co., 155 Tex. 548, 289 S.W.2d 753 (1956), we cannot say he was wrong. Although the evidence would support a finding that Lykes gave John Hancock timely oral notice of termination of Pittman's employment as of December 31, 1955, the judge's finding that no such notice was given, so that the March 26, 1956 written notice was the first, is surely not clearly erroneous, F.R.Civ.P. 52(a).

■ Decision as to the 12% penalty [1] depends on whether Texas would and constitutionally could apply its statute on the facts here. These are that the original group policy was issued in Florida to Lykes, a Florida corporation, in 1928 when John Hancock was not doing business in Texas; that Pittman, being then employed in Houston, applied for coverage in 1933; that John Hancock began doing business in Texas in 1937; that thereafter the policy was renewed annually and amended many times, including the addition, in 1949, of the clause here at issue; that after this amendment John Hancock delivered a new certificate of insurance embodying this provision to Pittman, then a resident of Texas; and that Florida does not impose a penalty.

Such difficulty as exists with respect to the meaning of Texas law comes from one of the last gasps of Swift v. Tyson, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), namely, Boseman v. Connecticut Gen. Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937). Texas law provided then, as it does now in Texas Ins. Code art. 21.42, that any contract of insurance payable to a Texan by an insurer doing business within Texas is governed by Texas law. Taking note of decisions of the Court of Civil Appeals of Texas that delivery of a certificate under a group policy in Texas made Texas law applicable to a controversy between a Texan and the insurer, even when the

---

* Of the Second Circuit, sitting by designation.

1. Since the parties stipulated that Florida also provides for attorneys' fees in such an action as this, no issue is presented on that score.

**408**

insurer was not doing business in that state, the United States Supreme Court declined to agree—apparently as a matter of "general law" rather than on constitutional grounds. Less than six months before Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Texas Commission of Appeals, in Metropolitan Life Ins. Co. v. Wann, 130 Tex. 400, 109 S.W.2d 470, 115 A.L.R. 1301 (1937), noting Boseman's criticism of the Texas cases, said, "That decision is on a question of conflict of laws, and will be followed by this court," and held, with respect to the same penalty statute here at issue, "that the policy provisions are governed by the laws of New York * * * [where the group policy was issued], unless it be established * * * that at the time the group policy was issued the plaintiff in error [Metropolitan] was doing business in this state." The District Judge held this test to be satisfied here by the fact that John Hancock began doing business in Texas before the group policy was amended to include the clause on which plaintiffs' rights depend. In the absence of citation of contrary Texas authority, we accept this not unreasonable view of a judge experienced in Texas law, Bernhardt v. Polygraphic Co., 350 U.S. 198, 204, 76 S.Ct. 273, 100 L.Ed. 199 (1956) —quite apart from the possibility that Texas might determine to shrug off the shackles assumed in Wann in deference to the Supreme Court's Boseman decision.

█ Our last remark prefigures our holding that there is no constitutional inhibition against Texas' applying its penalty statute on the facts here if it chooses to do so. To be sure, Aetna Life Ins. Co. v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342 (1924), which the appellant has not even cited to us, looks the other way. But, apart from a possible distinction between the unilateral conversion in Texas of the Tennessee policy there involved and the issuance of a certificate extending to a Texan the benefits of an out-of-state master contract, we

regard the Dunken decision, although never explicitly overruled, as basically inconsistent with the Supreme Court's current approach to such problems, recently demonstrated in Clay v. Sun Ins. Office, Ltd., 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964). If Texas chooses to invoke its penalty statute on behalf of the estate of a Texan whose last employment was in Texas against a group insurer licensed to do business there, we see nothing in the Constitution that stands in its way.

The judgment is affirmed.