**AETNA LIFE INSURANCE COMPANY,
Appellant,**

**v.**

**John C. BARNES, Appellee.**

**No. 21987.**

United States Court of Appeals
Fifth Circuit.

May 24, 1966.

Kleber C. Miller, Simon, Crowley, Wright, Ratliff & Miller, Fort Worth, Tex., for appellant.

Al Clyde, Clyde, Hines & Craig, Fort Worth, Tex., for appellee.

---

* Of the Second Circuit, sitting by designation.

1. Aetna Life Insurance Company.

2. General Dynamics Corporation, at Fort Worth.

3. The certificate of insurance issued to the Employee referred to them as Group

Before RIVES, BROWN and MOORE,* Circuit Judges.

JOHN R. BROWN, Circuit Judge:

On stipulated facts, the trial Court held the Insurer under a group policy liable to the Employee for total disability benefits. As to that holding we reverse, but remand the case as it is not certain that a possible alternative basis for liability has been factually explored.

The Insurer[1] had issued to the Employer[2] a series of integrated group policies.[3] The Employee[4] had been issued a Certificate of Insurance (note 3, supra).

By formal pretrial order, F.R.Civ.P. 16, the parties stipulated that there "are no contested issues of fact * * * and the case is submitted * * * on the stipulations contained in * * *" that order. The stipulated facts as such were few and tersely stated. We repeat, or slightly paraphrase, them without elaboration.

The Employee was "employed by" the Employer "at Fort Worth, Texas and * * * such employment was terminated on" January 26, 1962, "by his employer." During the time the Employee was "employed with [the Employer] and prior to the date of termination," he contracted acute and chronic pancreatitis and gall bladder trouble," and as a result of "such illnesses, he became totally and permanently disabled on February 24, 1962," approximately a month after termination of his employment. But prior to February 24, 1962, "he had not been totally and permanently disabled."

From these abbreviated, but critical, facts two things stand out. First, within in approximately a month after termination of employment, the Employee became totally and permanently disabled as a result of illnesses which were active and incurred during employment. But sec-

Life Policy No. 4945-R; Group Accidental Death and Dismemberment Policy No. LL-58012; Group Disability Policy No. GS 9091; and Group Hospitalization Expense Policy No. H-3120-R.

4. John C. Barnes.

ond, although such illness was active during employment, it had not up to date of separation produced total permanent disability.

Although we are not benefited by an opinion of the District Judge in this effort to unravel Texas Insurance law,[5] the conclusions of law based on findings of fact which are nothing more than a repetition of the stipulated facts, reveal quite clearly the District Judge's approach. Thus, he held, the "policy and certificate of insurance covers the total and permanent disability of the [Employee] beginning on February 24, 1962, which was *caused by* and had its *source in* acute and chronic pancreatitis and gall bladder trouble contracted by [him] while he was employed with [the Employer] and prior to the date of termination with [the Employer]." (Emphasis added). To the

Judge the decisive point was the *time* during which the illness had its onset, not the *time* its consequences became totally disabling.

To this the Insurer has a simple, but awesome, answer: this completely disregards the policy. And so it does, for under the policy the critical thing is that the Employee has become totally disabled "while insured under the group policy." It matters not when the illness was first contracted, whether during or before employment. Indeed, the existence of employment is itself secondary for the critical time is spoken of in terms of the time "while [the employee is] *insured* under the group policy."[6] Nevertheless the two are closely intertwined as termination of insurance is defined essentially in terms of termination of employment.[7]

---

5. The task can be arduous. See, e.g., United Servs. Life Ins. Co. v. Delaney, 5 Cir., 1966, 358 F.2d 714 (en banc, per curiam), [March 31, 1966], *vacating* 5 Cir., 1962, 308 F.2d 484, modified on rehearing, 1964. 328 F.2d 483 (en banc), cert. denied, 377 U.S. 935, 84 S.Ct. 1335, 12 L.Ed.2d 298, *and reversing* W.D.Tex., 1961, 201 F.Supp. 25, after Texas courts refused to assume jurisdiction upon abstention, Tex., 1965, 396 S.W.2d 855, affirming Tex.Civ.App., 386 S.W.2d 648; and the connected cases, Paul Revere Life Ins. Co. v. First Nat'l Bank, 5 Cir., 1966, 359 F.2d 641 (en banc) [No. 19604, Mar. 31, 1966], after abstention in 1964, 328 F.2d 483; St. Paul Mercury Ins. Co. v. Price, 5 Cir., 1966, 359 F.2d 74 (en banc) [No. 20396, March 31, 1966], after abstention in 1964. 329 F.2d 687.

6. For ease of reference, numbers and letters in brackets are inserted, e.g., [1] [a]:

"[1][a] Upon receipt * * * of satisfactory evidence that the Employee, [b] while insured under the group policy * * * has become totally disabled [c] and that such disability has existed continuously for a period of six months or more [d] and will presumably prevent the Employee for life from engaging in any * * * employment for * * * profit, [e] the Insurance Company will pay to the Employee * * * the amount of insurance in force upon the Employee's life at the time such disability commenced."

7. As in note 6, numbers in brackets are added for convenience:
"TERMINATION OF INSURANCE
"[2] The insurance of the Employee will terminate at the earliest applicable time indicated below:
"(a) * * *
"(b) * * *
"(c)[i] Insurance of the Employee will automatically cease upon termination of employment (except as provided in the next succeeding paragraph.) [ii] Cessation of active work by the Employee will be deemed termination of employment, except that [iii] if the Employee is absent on account of sickness or injury, [iv] or on account of temporary layoff or leave of absence, employment for group insurance purposes may be deemed to continue [v] while *premium payments are continued* by the Employer for Insurance of the Employee in accordance with the terms of the group policy.

"[3] If the Employee dies within thirty-one days after termination of employment, and if the Employee was insured under the group policy upon the date of termination of employment, then the amount of insurance for which the Employee was insured upon the date of termination of employment, less the amount of any individual policy issued within said thirty-one days on the life of the Employee in accordance with the conversion privilege described in this Certificate and in force at date of death, will be paid to the beneficiary under

The plain wording of the policy (note 6, supra) prevents the application of the District Court's approach. And all of the cases urged here—which presumably persuaded the Court below [8]—confuse the issue of the time at which proof of the existence of total disability must be made with the time at which such disability must exist. Indeed, the policy itself magnifies this distinction [9] as do the text authorities [10] so heavily relied on by the Employee.

■ On the basis of the case as stipulated and tried, the judgment casting the Insurer liable for disability benefits was clearly wrong and must be reversed.

We must, however, deal with some theories which were unearthed largely as a result of a probing exploration from the bench during oral argument. It seemed to us from our recent experience with John Hancock Mut. Life Ins. Co. v. Schroder, 5 Cir., 1965, 349 F.2d 406, affirming S.D.Tex., 1962, 210 F.Supp. 756, and 1964, 227 F.Supp. 622, that too little attention has been paid to policy provisions which, for one reason or another, purported to keep the policy alive after formal separation from employment.

The first is the theory that the Texas Insurance Code, V.A.T.S. [11] by requiring a 31-day grace period and a mandatory conversion privilege [12] kept the policy

the group policy subject to any requirements of the group policy with regard to notice and proof of claim. Such payment will be in lieu of all other benefits with respect to the group life insurance of the Employee."

8. The Employee cites Pan American Life Ins. Co. v. Welch, Tex.Civ.App., 1934, 74 S.W.2d 408 (no writ history); International Travelers Ass'n v. Bettis, Tex.Civ. App., 1932, 52 S.W.2d 1059 (writ ref'd).

9. Following the insuring provision (note 6, supra), the policy goes on to provide:
"When claim is made for permanent total disability benefits for the Employee, the Insurance Company will be permitted to examine the Employee at any time before the Employee is admitted by the Insurance Company to be permanently and totally disabled.
"NOTICE OF CLAIM
"Written notice of claim for the death benefit or permanent total disability benefits provided in the group policy for the Employee shall be given to the Insurance Company at its Home Office within one year after cessation of premium payments for insurance of the Employee; if such notice is not given, the Insurance Company will not be liable for any payment on account of the death or disability of the Employee."

10. Thus, the Employee ignores altogether the concluding phrase from 3 Appleman, Insurance Law and Practice § 1524: "In the absence of specific policy provisions, proof of disability need not be made during the time the insured is still employed. It is, of course, necessary that the disability be shown to have arisen during the

continuance of such employment * *." See Connecticut Gen. Life Ins. Co. v. Horner, Tex.Civ.App., 1929, 21 S.W.2d 45 (writ dism'd); Lewis v. Connecticut Gen. Life Ins. Co., Tex.Civ.App., 1936, 94 S.W.2d 499 (writ ref'd); McClendon v. Southwestern Life Ins. Co., Tex.Civ. App., 1936, 98 S.W.2d 866 (no writ history); Metropolitan Life Ins. Co. v. Fernandes, Tex.Civ.App., 1937, 94 S.W.2d 228 (no writ history). See generally Annot., time of Disability or Death With Regard to Termination of Coverage Under Group Policy, 68 A.L.R.2d 150, 160 (1959), and Texas cases cited therein.

11. Tex.Ins.Code Ann. art. 3.50, § 2(1), (8) (1963).

12. "CONVERSION PRIVILEGE
"In case of termination of employment for any reason whatsoever, the Employee will be entitled to have a policy of life insurance issued to him by the Insurance Company without further evidence of insurability, provided:
"(a) the amount of the policy will be in an amount equal to or, at the option of the Employee, an amount less than the amount of the Employee's life insurance under the group policy at the time employment terminated,
"(b) the policy will be upon one of the forms then customarily being issued by the Insurance Company, except Term Insurance,
"(c) the policy will require payment of the premium applicable to the class of risk to which the Employee belongs and to the form and amount of the policy at the Employee's then attained age,
"(d) written application for such a policy and payment of the first premium

alive up through (and beyond) February 24, 1962.

As originally enacted in 1931, the subsection providing for a mandatory conversion privilege recognized that the conversion "policy may or may not contain provisions for disability benefits and provisions for accidental death benefits, at the option of the Company." [13] This section has been successively amended [14] to find its way into the Insurance Code of Texas, Tex.Ins.Code Ann. art. 3.50, § 2 (8), enacted in 1951.[15] By Art. 3.50, § 2(1) of the Code, as amended and presently in force, the Group Life Policy must afford "a grace period of thirty-one (31) days for the payment of any premium * * * during which grace period the death benefit coverage shall continue in force * * *." But by § 2(8) the mandatory conversion privilege to be afforded "if the insurance * * * on a person covered under the policy ceases because of termination of employment * * *" is now expressly limited to "an individual policy of life insurance *without disability or other supplementary benefits.*" (Emphasis supplied) And § 2(10) automatically extending for the 31-day period the insurance provided by the conversion privilege, whether exercised or not,[16] defines the triggering condition "if a person insured under the group policy *dies* during the" 31-day conversion period and restricts the benefits to "the amount of *life insurance*" to which he would have been entitled.

But comprehensive as is this intricate insurance structure and evident as is the Texas concern over the rights of its citizens as nominal assureds under group programs, no aid or comfort comes to the Employee here. First, from 1931 down through the Code, it is clear that Texas distinguishes carefully between group *life* insurance and those other benefits which often are, but need not be, a part of a group life policy. Next, and apart from the mandatory automatic insurance under § 2(10),[17] note 16, supra, neither the 31-day grace period for payment of premiums nor the conversion privilege if unexercised has the effect of continuing the insurance in force after termination of employment if by the policy terms that event simultaneously terminates insurance.[18]

The second theory is more plausible and could succeed if factually supported. The heart of this contention is that the Insurer is too preoccupied with termination of *employment* rather than termination of *insurance*. Keeping this distinction carefully in mind, so the argument runs, benefits for total permanent disability occurring after formal separation from employment are nonetheless recoverable if, by reason of the policy terms, the insurance is kept alive after employment.

must be made by the Employee within thirty-one days after termination of employment.

"When an individual policy is issued under the 'Conversion Privilege,' it will be in exchange for all group life benefits under the group policy."

13. Tex.Laws 1931, ch. 101, § 2(4).

14. Tex.Laws 1941, ch. 610, § 1, at 1346; Tex.Laws 1943, ch. 347, § 1, at 602; Tex.Laws 1943, ch. 349, § 1, at 604; Tex. Laws 1947, ch. 208, § 1, at 366; Tex. Laws 1947, ch. 235, § 3, at 428.

15. Tex.Laws 1951, ch. 491.

16. This mandatory coverage is afforded in [3] of the policy, note 7, supra.

17. Tex.Ins.Code Ann. art. 3.50, § 2(10).

18. See Schooley v. Metropolitan Life Ins. Co., Tex.Civ.App., 1934, 77 S.W.2d 886 (no writ history) ; Lewis v. Connecticut Gen. Life Ins. Co., Tex.Civ.App., 1936, 94 S.W.2d 499 (writ ref'd) ; Roy v. Aetna Life Ins. Co., Tex.Civ.App., 1945, 191 S.W.2d 498 (writ ref'd) ; Pan-American Life Ins. Co. v. Garrett, Tex.Civ.App., 1946, 199 S.W.2d 819 (no writ history) ; DePauw v. Aetna Life Ins. Co., Tex.Civ. App., 1954, 268 S.W.2d 734 (no writ history) ; Travelers Ins. Co. v. Brewer, Tex. Civ.App., 1961, 351 S.W.2d 116 (no writ history). This seems to be the generally accepted approach, Annot., 68 A.L.R.2d 8, 116–121 (mandatory conversion privilege), 127 (grace period), as opposed to the minority view urged by the Employee here, id. at 125 (mandatory conversion privilege), 131 (grace period).

Of course, the Employee is absolutely right in this theory. It finds express support in the termination of insurance clause, [2] (c) [ii]–[v], (note 7, supra), and perhaps other parts of the policy.[19] Under [2] (c) it does state, of course, that the "insurance * * * will automatically cease upon termination of employment." But clause [2] (c) [ii], [iii], [iv] and [v] directly subtract from this sweeping, peremptory generality. Reading all together, merely ceasing active work does not constitute termination of employment if "(c) [ii] cessation of active work" is due to the employee being "[iii] absent on account of sickness or injury" or "[iv] on account of temporary layoff or leave of absence." In that situation employment for group insurance purposes is "deemed to continue" during such times as "[v] premium payments are continued by the Employer for Insurance of the Employee." Thus, if the Employee ceased active work on January 26 because of sickness, injury, layoff or leave of absence, and if the Employer continued to pay the premiums for him through February 24, his insurance would continue to that time, and he would be entitled to disability benefits because he became totally and permanently disabled while insured under the policy.[20]

On the argument of the case, we had the strong impression that in the presentation of the cause in the trial Court, in the preparation of the stipulation and the development of the legal theories, these policy provisions had been either ignored or their importance underestimated. Of course it is not for us to remake the record or to reject that which the parties by their formal stipulation have proffered to the trial, and now to this Court. But since these policy provisions have such an immediate and perhaps decisive impact, we think that in the administration of justice, Gulf Oil Corp. v. Wright, 5 Cir., 1956, 236 F.2d 46, 53, the reversal of the judgment on the theories directly presented should not prejudice the right of the Employee to pursue this theory on remand. Especially is this so since the stipulated facts as to the critical element of termination of employment (and hence insurance) are stated in conclusory, not evidential, factual terms.[21] If there is an arguable factual basis for bringing the cessation of active work within [2] (c) [iii] or [iv], then the parties should be afforded an opportunity to withdraw from the stipulation. F.R.Civ.P. 16; cf. Laird v. Air Carrier Engine Serv., 5 Cir., 1959, 263 F.2d 948, 953. Of course, as a part of any theory, the facts must also satisfy [2] (c) [v], but considering the manner in which large employers of the kind here involved handle group insurance programs for large bodies of employees, it is not at all unlikely that for this limited 24-day period, the proper premium contributions either were made or the Employer vis-a-vis the Insurer became liable therefor. We think for Texas, as we did for Florida, Prudential Ins. Co. v. Roberts, 5 Cir., 1966, 358 F.2d 394 [March 29, 1966], that in determining whether premium payments have been made, the employee's

---

19. See, e.g., the insuring clause [1]. Often the disabling condition and cessation of work will coincide. But they need not do so and, indeed, that alone is not enough. Thus under [1][b] the facts must show that during the time the insurance was in force, the employee "has become totally disabled." But under [1] [c] the proof must show that such disability "has existed continuously for a period of six months or more." Since this disability is defined as being such as "[1][d] will presumably prevent the Employee for life from engaging in any * * * employment for * * * profit," it is quite likely that in many situations the employee will have been unable to actively work for at least six months.

20. See generally Annot., 68 A.L.R.2d 8, 72–95.

21. Thus, it was stipulated that the Employee "was employed by General Dynamics at Fort Worth, Texas, and that such employment was *terminated* on the 26th day of January 1962 by his employer." Again in paragraph 5 it was stipulated that the Employee "contracted" these conditions "while employed with General Dynamics and prior to the date of *termination* with General Dynamics." (Emphasis added.)

rights are not to be jeopardized by internal bookkeeping-administrative practices adopted for the convenience of the Employer and the Insurer.

Of course, it may be that in the use of these conclusory terms in the stipulated facts the parties recognize that under no arguable basis can termination of insurance be postponed through these policy definitions of termination of employment. That will soon be made known to the trial Court, and in that event the case will be at an end. The case is therefore reversed but remanded for further and not inconsistent proceedings.

Reversed and remanded.