Allen W. BLISS, Plaintiff-Appellee,

v.

EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES et al., Defendants-Appellants.

No. 78–3221.

United States Court of Appeals, Fifth Circuit.

June 25, 1980.

Larry M. Lesh, Dallas, Tex., for defendants-appellants.

Otto B. Mullinax, Dallas, Tex., for plaintiff-appellee.

Before BROWN, AINSWORTH and FRANK M. JOHNSON, Jr., Circuit Judges.

AINSWORTH, Circuit Judge:

In this Texas diversity action, Allen W. Bliss brought suit against The Equitable Life Assurance Society of the United States (Equitable) and Encyclopaedia Britannica, Inc. (Britannica), to recover benefits allegedly owing on three group insurance contracts covering his deceased wife Mary

Frances Bliss (Mrs. Bliss). He also sought exemplary damages for Equitable's and Britannica's allegedly malicious refusal to pay benefits. The case was submitted to the jury on the basis of certain special issues. As a result of the jury's findings, the district court entered judgment in favor of Allen W. Bliss, and defendants appealed. We affirm.

Mrs. Bliss was employed by Britannica in the position of a Salesmaster. On or about February 20, 1975, while in the course of her employment with Britannica, Mrs. Bliss fell and sustained injuries to her ankle, hip, elbow, and shoulder. Treatment proved ineffective, and she entered Baylor Hospital in Dallas on March 30. She remained there until April 12, after which time she stayed home under doctor's supervision. On August 15, she was admitted to St. Paul's Hospital in Dallas as a result of increasingly severe abdominal pains. Exploratory surgery revealed that she was suffering from advanced carcinoma of the ovaries. Further surgery was unable to reverse the cancer. She reentered St. Paul's in January 1976 and February 1976 for further treatment of the carcinoma. She died as a result of the disease on March 13, 1976.

Britannica provided medical insurance coverage to its Salesmasters under three different group insurance contracts issued by Equitable. One policy provided $8,000 of life insurance for an employee in Mrs. Bliss' classification. Britannica paid the entire premium under this policy. Another policy covered basic hospital, medical, and surgical expenses in accordance with a set fee schedule and also provided major medical benefits. Britannica paid 75% of the premiums under this policy with the remainder paid by the employee. Mrs. Bliss'

share was automatically deducted from her pay check by Britannica. The third policy provided a benefit of $20 per day for each day an employee was hospitalized up to a maximum period of 180 days. Again, Britannica paid 75% of the premiums. All three policies contained provisions terminating coverage in the event of certain occurrences. At issue in this case is the effect of the following provision contained in one policy with similar provisions in the other policies:

INDIVIDUAL TERMINATIONS

The insurance hereunder of any employee shall cease automatically upon the occurrence of any of the following events:

(1) the termination of this policy,

(2) the cessation of premium payments on account of such employee's insurance hereunder,

(3) the expiration of the last day of the calendar month in which occurs the termination of his employment in the classes of employees insured hereunder. Cessation of active work by an employee shall be deemed to constitute the termination of his employment except that, for the purposes of the insurance hereunder and subject to the continuance of the payment of premiums for such employee's insurance on a basis which precludes individual selection.

. . . . .

(b) an employee absent from active work because of injury or sickness may be regarded as still in the employment of the Employer for the full period of such absence but not exceeding a maximum period of one year.[1]

1. The life insurance policy contained substantially similar language. The group insurance policy providing a daily benefit for each day of hospitalization provided for termination of coverage on

(3) the last day of the month following the termination of his employment in the classes of employees insured hereunder. Cessation of active work by an employee shall be deemed to constitute the termination of his employment except that if the employee becomes disabled by injury or disease such employee shall for the purposes of the insurance hereunder be regarded as still in the employment of the Employer during any period for which such employee is receiving benefits hereunder. At the expiration of the aforementioned period, unless the employee shall then return or shall have theretofore returned to active work, his insurance hereunder shall terminate automatically.

Prior to her death, Mrs. Bliss made repeated efforts to obtain benefits under the policies for various medical expenses incurred in the treatment of her condition. Defendants paid benefits for covered expenses accruing before April 30, 1975, but refused all other claims. On April 29, Britannica wrote Mrs. Bliss informing her that coverage under the policies would end as of April 30 because her employment had been terminated on April 10. Mrs. Bliss wrote back informing Britannica that she considered herself covered under the policies since, to the best of her knowledge, she was still employed by Britannica. Subsequent correspondence failed to resolve the dispute. Mrs. Bliss' efforts to obtain coverage for her medical expenses under the policies' extended benefits provisions were also rejected. After he death, Mrs. Bliss' husband brought suit to collect medical and life insurance benefits under the policies.

At trial, a key issue was whether Britannica actually terminated Mrs. Bliss on April 10, 1975, as appellants contended. The issue was important since, if she was terminated, basic insurance coverage under the policies would cease as of the last day of the month in which she was terminated. In support of their position, appellants introduced certain documentary evidence purporting to demonstrate the alleged termination. Also introduced was the testimony of Danny Martell, Britannica's Division Manager for the Dallas Division and Mrs. Bliss' immediate supervisor. Martell stated that he had called Mrs. Bliss on April 10 to terminate her for the reason that she had a poor sales record in the past several months. In addition, he claimed that he had dis-

cussed her low sales productivity with her in the past on several occasions.

In response, appellee offered evidence contradicting the claim of low sales productivity including Britannica's sales charts showing that Mrs. Bliss' performance was as good as or better than the sales performance of other personnel who were not discharged. Appellee also introduced several issues of Britannica's national newsletter showing Mrs. Bliss winning various awards for sales production. Martell's testimony was further repudiated by his own earlier deposition wherein he stated that he could not "specifically recollect terminating her, but it's possible that I may have terminated her." Finally, appellee introduced a series of business records from Britannica's files showing contradictory dates and reasons for Mrs. Bliss' termination. The final record showed that Mrs. Bliss *resigned* her employment on May 18, 1976, *more than two months after her death.*

■ The district court submitted the case to the jury on the basis of seven special issues. Special Issue No. 1 required the jury to find when, if ever, Mrs. Bliss was terminated from her employment with Britannica.[2] The jury found that Britannica never terminated her employment, and this answer mooted the need to answer Special Issues Nos. 2–4.[3] The jury also had to answer Special Issue No. 5 asking whether a conspiracy between Equitable and Britannica to deny payment of benefits to Mrs. Bliss existed. The jury found that no such conspiracy existed, and this finding obviated the need to answer the remaining special issues.[4] The district court entered judg-

---

2. Special Issue No. 1 read as follows: "Do you find from a preponderance of the evidence that the employment of Mary Frances Bliss with Encyclopedia Brittanica (sic) was terminated (answer "YES" or "NO" as to each subdivision):

   a.  on April 10, 1975   ———
   b.  on May 9, 1975   ———
   c.  on May 18, 1976   ———
   d.  never   ——— "

3. Special Issues Nos. 2–4 were addressed to the question of disability if the jury found that Mrs. Bliss was terminated.

4. Special Issues Nos. 5A, 6, and 7 concerned the measure of damages if the jury found a conspiracy between the appellants.

Appellee Bliss argues that the district court improperly limited the jury's consideration of the issue of exemplary damages by not permitting the jury to find just one of the appellants liable for such damages. In the first amended complaint, appellee alleged that "Defendants combined and conspired to deny Plaintiff and

ment on the basis of the jury's findings and on the basis of its opinion that "as a matter of law Frances Bliss, Deceased, was disabled within the meaning of the Group Insurance policies from her date of injury, February 22, 1975, and continuously so disabled from said date down to the date of her death." Judgment was entered finding Equitable and Britannica jointly and severally liable for breach of the group insurance contracts in the amount of $30,180.22 and for damages as provided for by Texas law [5] together with attorney's fees.

■■■■ Under Texas law, a provision in an insurance policy discontinuing coverage upon the termination of employment is valid. *Connecticut General Life Insurance Co. v. Horner*, 21 S.W.2d 45 (Tex.Civ.App.1929), error dismissed. The phrase "termination of employment" means the end of employment status, or in other words, "the complete severance of the relationship of employer and employee . . . ." *Pan American Life Insurance Co. v. Garrett*, 199 S.W.2d 819, 821 (Tex.Civ.App.1946). At trial, the parties presented conflicting evidence concerning Mrs. Bliss' termination of employment. Given that Martell's testimony, the only evidence directly involving the act of her termination, was contradicted by his own deposition testimony and that Britannica's records indicated a variety of dates and reasons for her leaving Britannica, the jury was justified in finding that Mrs. Bliss was never actually terminated within the meaning of the policies.[6]

On appeal, appellants do not directly challenge the jury's finding that Mrs. Bliss was never terminated. Instead, they rely on a provision contained in the policies which provides for the termination of coverage upon the cessation of active work by the employee. Specifically, the policies provide that "[c]essation of active work by an employee shall be deemed to constitute the termination of his employment, . . . ." Accordingly, appellants argue that the fact of Mrs. Bliss' actual termination by Britannica is irrelevant since under the policies she was "deemed" terminated in April because she ceased active employment at that time.

Prior to Mrs. Bliss' death, neither Equitable nor Britannica based their refusal to pay benefits on the theory that Mrs. Bliss was "deemed" terminated by reason of her inactivity. Throughout their dealings with her, appellants stated that benefits were being denied because she was actually terminated effective April 10, 1975. On April 29, Mr. R. A. Poggensee, Supervisor of Britannica's Group Insurance Department, wrote Mrs. Bliss to advise her that since her "association with Encyclopaedia Britannica was terminated 4/10/75" her insurance coverage would end as of April 30. At trial, appellants' position was also that Mrs. Bliss had been actually terminated as of April 10. In their answer to the complaint, appellants stated that the policies "provided that insurance of employees of Britannica . . . would automatically terminate upon the termination of employment of such employees. . . . " and they did not state

his wife the benefits due them under said policy . . . ." (R. 25) The district court, in reliance on the allegations in the complaint and the facts presented at trial, asked the jury whether a conspiracy existed between the appellants. During its deliberations, the jury asked the district judge whether it could find one of the defendants liable for malicious conduct in processing Mrs. Bliss' claims. After hearing oral argument, the district judge answered in the negative. In light of the allegations in the complaint, we hold that the district judge properly resolved the matter. The allegation of conspiracy was deliberate in light of the fact that under Texas law exemplary damages could not be awarded against a single party for breach of contract even if the breach

was willful or malicious. *See, e. g., Kingsley v. Baker/Beech-Nut Corp.*, 546 F.2d 1136, 1142 (5th Cir. 1977); *Vanston v. Connecticut General Life Ins. Co.*, 482 F.2d 337, 343 (5th Cir. 1973).

5. The damages were awarded under Texas Insurance Code Article 3.62 and are not independently contested by appellants.

6. The question of termination is a factual inquiry to be resolved by the factfinder in appropriate cases. *See, e. g., Cogsdill v. Metropolitan Life Ins. Co.*, 158 S.C. 371, 155 S.E. 747 (1930); *Peters v. Aetna Life Ins. Co.*, 279 Mich. 663, 273 N.W. 307 (1937).

anything about the cessation of active employment. As stated above, one of the main issues in this regard was whether Mrs. Bliss was actually terminated as of April 10. After the the jury's verdict was returned, appellants did not rely on the "deemed" termination theory in either their Motion for Judgment, Motion to Amend Judgment, or Motion for New Trial.[7] Moreover, appellants' contention that Mrs. Bliss should be deemed terminated as a matter of law in April is curious since she stopped work in February after the accident. Nothing occurred in April to warrant her "deemed" termination by virtue of her cessation of active work.

As a general principle of appellate review, this court will not consider a legal issue or theory that was not presented to the trial court. *See, e. g., Excavators & Erectors, Inc. v. Bullard Engineers, Inc.,* 489 F.2d 318, 320 (5th Cir. 1973); *D. H. Overmyer Co. v. Loflin,* 440 F.2d 1213, 1215–16 (5th Cir. 1971), *cert. denied,* 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971). "[J]udicial economy is served and prejudice is avoided by binding the parties to the facts presented and the theories argued below." *Higginbotham v. Ford Motor Co.,* 540 F.2d 762, 768 n.10 (5th Cir. 1976). Appellants' theory of "deemed" termination by virtue of Mrs. Bliss' cessation of active work was not presented to the district court. The district court should have had an opportunity to consider the relationship of this contract language to the facts of the case. The policies do not expressly define what constitutes "cessation of active work by an employee," and appellants cite no cases construing the phrase. Such a provision seems

capable of different meanings especially given that it must be read in conjunction with other terms of the policy concerning actual termination of employment. For example, cessation of active employment may refer to cases where the employee voluntarily stops work because of a strike, *see Chrosniak v. Metropolitan Life Insurance Co.,* 121 Misc. 453, 201 N.Y.S. 211 (1923), *aff'd mem.,* 209 App.Div. 846, 204 N.Y.S. 898 (1924). Factual issues involving whether Mrs. Bliss ceased active work within the confines of her particular job are presented which would have required evidentiary support. Indeed, as a legal matter, appellants may be estopped from raising the defense since they did not rely on the "deemed" termination theory in their dealings with Mrs. Bliss prior to her death. In light of the above, appellants should not be permitted to raise this new ground on appeal. The case was tried, and lost as far as appellants are concerned, on the theory that Mrs. Bliss was actually terminated by Britannica and thus did not qualify for insurance benefits.

Even assuming that this court were to hold as a matter of law that Mrs. Bliss ceased active employment within the meaning of the insurance policies, the result would not change. The policies provide that if an employee ceases active employment because of "injury or sickness," coverage under the policies would continue. In its judgment the district court held that as a matter of law Mrs. Bliss was disabled from the date of her injury in February 1975 until her death in March 1976. The evidence on this point is overwhelming and need not be chronicled here.[8] As such, Mrs.

---

7. For example, appellants' Motion for Judgment was premised on the theory that since premiums were not paid after April 30, 1975 and the jury had made no findings as to disability so as to entitle Mrs. Bliss to any extended benefits, no coverage existed. Similarly, appellants' Motion to Amend Judgment is based on the nonpayment of premiums. Finally, in their Motion for New Trial, appellants' primary position is that the jury could not have found that Mrs. Bliss was never actually terminated. No mention of the "deemed" termination theory was presented.

8. At trial much evidence was presented concerning what ailment caused Mrs. Bliss' disability at various times. Thus, it was clear that immediately after her accident, the injuries sustained in the fall were the cause of the disability. By August, however, it was equally clear that the carcinoma was the cause. Under the extended benefits provisions of the policies, it was important to determine the precise cause of the disability at the time of Mrs. Bliss' termination since extended benefits would only be provided to a disabled employee who continued

Bliss was unable to return to work because of sickness or injury, and thus even if "deemed" terminated, insurance coverage would continue.

Appellants argue that the "sickness or injury" exception is unavailable to appellee since the exception is conditioned upon the continuation of premium payments. In the present case, Britannica halted premium payments after April 30, 1975. Moreover, appellants argue that since two of the three policies were contributory, Mrs. Bliss' failure to pay her share of the premiums after April 30 should also act to prevent coverage.

Appellants' argument is without merit. Throughout her employment, Britannica was responsible for paying the premiums on the three policies. Mrs. Bliss' share of the payments were deducted directly from her paycheck and paid to Equitable. In light of the jury's finding that Mrs. Bliss was never properly terminated, it was the obligation of Britannica, acting as agent for Equitable, *see General American Life Insurance Co. v. Gant*, 119 S.W.2d 693 (Tex.Civ.App. 1938), error dismissed, to pay the premiums on the policy. Neither Equitable nor Britannica billed Mrs. Bliss for any premiums due. It was admitted at trial that premiums would have been paid if Britannica's Chicago office had not been operating under the assumption that Mrs. Bliss' employment was terminated. In light of the jury's finding, Britannica cannot now assert its own wrongful acts of failing to pay premiums as a defense to this suit.[9]

Since the jury found that Mrs. Bliss was never terminated from her employment with Britannica, and since this necessarily means that she remained covered under the policies, the judgment is affirmed.

AFFIRMED.

to suffer from the same disabling condition. But for purposes of the "deemed" termination provision the question of which condition caused the disability is immaterial since the policy only provided that cessation of active work because of a "sickness or injury" shall not act to terminate coverage. There was no dispute that Mrs. Bliss was not able to return to work because of some injury or sickness.

9. Similarly, appellants' related argument that nonpayment of premiums even independent of the "deemed" termination provision should act to deny recovery in this case is without merit. The fact is that premiums were halted upon the wrongful belief by Britannica's Chicago office that Mrs. Bliss had been effectively terminated. The jury found otherwise, and Britannica cannot now be permitted to escape liability on the basis of its wrongful conduct.